OCI MORTGAGE CORPORATION *v.* CAROLE N.
MARCHESE ET AL.
(SC 16300)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 5, 2000—officially released March 20, 2001

*Matthew B. Woods*, for the appellant (plaintiff).

*Edward T. Murnane, Jr.*, with whom, on the brief, was *Gary A. Mastronardi*, for the appellees (named defendant et al.).

*Opinion*

KATZ, J. The issue presented in this certified appeal is whether the Appellate Court properly concluded that 12 U.S.C. § 1823 (e),[1] codifying the doctrine established in *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942) (*D'Oench, Duhme* doctrine), did not apply to the defendants Carole N. Marchese and Anthony J. Marchese[2] to bar their defenses of setoff and payment of a mortgage note

---

[1] Section 1823 (e) of title 12 of the United States Code provides: "No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section or under section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [Federal Deposit Insurance] Corporation unless such agreement—

"(A) is in writing,

"(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

"(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

"(D) has been, continuously, from the time of its execution, an official record of the depository institution."

Section 1823 (e) has been amended since the time the subordinated debenture agreements at issue in this case were executed. See Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, § 217 (4), 103 Stat. 254; Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, § 317, 108 Stat. 2223. The amendments were technical in nature and are not relevant to this case. For purposes of convenience and clarity, we refer to the current revision of § 1823 (e).

[2] Cadle Company, Southgate of Southport Condominium and the town of Fairfield were also named as defendants in the trial court. The action was withdrawn against the town of Fairfield and Southgate of Southport Condominium, and the Cadle Company is not involved in this appeal. References herein to the defendants are to Carole N. Marchese and Anthony J. Marchese.

issued by them to a savings and loan association that later had been declared insolvent. The plaintiff, OCI Mortgage Corporation (OCI), had acquired the mortgage note after the savings and loan association's failure, and initiated this foreclosure action on the defendants' property. The Appellate Court concluded that, because the defendants, pursuant to a subsequent debenture agreement, had loaned the savings and loan association substantially more than the original mortgage note, and because the savings and loan association had defaulted on the interest payments under the debenture, which, subsequent to the debenture, had been tied to the mortgage payments, the defendants had executed a valid setoff prior to the savings and loan association's insolvency. *OCI Mortgage Corp.* v. *Marchese*, 56 Conn. App. 668, 682, 745 A.2d 819 (2000). We conclude that no setoff occurred in this case prior to the savings and loan association's insolvency and that 12 U.S.C. § 1823 (e) applies to bar that defense. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court reveals the following facts. On September 13, 1985, the defendants "executed a promissory note in the amount of $220,000, payable to Community Federal Savings and Loan Association [association], and secured by a mortgage on property that the defendants owned in Southport. While the note was still outstanding, the defendant Carole N. Marchese lent [the association] $900,000 pursuant to a subordinated debenture agreement.[3] Thereafter, [the defendant] Carole N. Marchese and [the association] agreed that the defendants' mortgage note would be paid by applying [the association's] interest payments on the debenture to the defendants' monthly mortgage

---

[3] The subordinated debenture agreement, dated January 15, 1987, referenced the terms and provisions of a separate subordinated debenture agreement dated June 5, 1986. We refer to both these agreements as the "subordinated debenture agreement."

payments.[4] In October, 1989, [the association] defaulted on its interest payments." (Internal quotation marks omitted.) Id., 670.

"The defendants mailed a letter to [the association] on November 14, 1989, giving written notice pursuant to § 10.01 of the [subordinated debenture] agreement.[5] The letter stated that if the default was not cured [within the fifteen day grace period provided in the agreement], the defendants 'will exercise all rights available to them not only under Section 10.02 of the foregoing Subordinated Debenture Agreement, but also under statutory and common law.' No further letter or notification followed before [the association's] demise." Id., 676 n.3.

On December 7, 1989, the association "was declared insolvent and the Resolution Trust Corporation [Resolution Trust] was appointed as its receiver in bankruptcy.[6]

---

[4] At oral argument before this court, counsel indicated that the quarterly interest payments on the debenture had been approximately $22,500 and that three months of payments on the mortgage note amounted to roughly $8000. Thus, as long as these payments were current, each quarter the defendants had received a net payment of approximately $15,000.

[5] Section 10.01 (a) of the subordinated debenture agreement provided that "[d]efault for a period of 15 business days in the payment of interest on any [d]ebenture after written notice thereof by certified mail to the [a]ssociation" constituted an event of default. The following section, § 10.02, provided that "[w]hen any event of default described in Section 10.01 above has occurred and is continuing any holder of any [d]ebenture may, by notice in writing sent by certified mail to the [a]ssociation, declare the principal of and any accrued interest on such [d]ebenture to be immediately due and payable without further demand, presentment, protest, or notice of any kind, subject, however, to the approval of the [Federal Savings and Loan Insurance Corporation] if after giving effect to such accelerated payment the [a]ssociation would fail to meet the net worth or Federal insurance reserve requirements set forth in [the federal regulations] . . . ."

[6] Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989; Pub. L. No. 101-73, 103 Stat. 183 (codified in scattered sections of 12 U.S.C.); Congress expanded 12 U.S.C. § 1823 (e) to apply to the newly created Resolution Trust in its receivership capacity. See *Duraflex Sales & Service* v. *W.H.E. Mechanical Contractors*, 110 F.3d 927, 933 n.4 (2d Cir. 1997). Resolution Trust was given the same powers and rights as the Federal Deposit Insurance Corporation; 12 U.S.C. § 1441a (b) (4) (A); and had been "established by Congress as a temporary federal agency to clean up the

[Resolution Trust] assigned the defendants' mortgage and loan documents to Fairfield Affiliates, the original plaintiff [in this action]. Fairfield Affiliates then assigned the defendants' note and mortgage to [OCI] and OCI was substituted as the plaintiff.[7]

"The trial court referred the case to an attorney trial referee [who heard testimony on June 21, 1996 and accepted the parties' stipulation of facts and exhibits]. After the trial concluded, the attorney trial referee filed her report, in which she recommended that judgment enter in favor of the defendants. Specifically, the attorney trial referee found that [Resolution Trust] knew about the agreements between [the association] and the defendants, and that [a]ll subsequent assignees of the [defendants'] mortgage note . . . including the plaintiff, OCI, accepted assignment of the note with notice of the $900,000 debt owed to the defendants, as well as the defendants' claim of set-off and payment.

savings and loan . . . crisis after the [Federal Savings and Loan Insurance Corporation] fund became insolvent." 1 Federal Deposit Insurance Corporation, Managing the Crisis: The FDIC and RTC Experience 1980–1994 (1998), p. 6. Resolution Trust merged or liquidated savings associations that had been insured by the Federal Savings and Loan Insurance Corporation and eventually was eliminated, transferring its operations to the Federal Deposit Insurance Corporation, in 1995. See id., pp. 11, 13. The Federal Deposit Insurance Corporation, which had managed Resolution Trust, remains as one of the principal federal entities charged with administering financial institution insolvencies. See id., pp. 10–13; 12 U.S.C. §§ 1441a (b) and 1813 (q) (1) through (4); see also *Securities Investor Protection Corp.* v. *BDO Seidman, L.L.P.*, 222 F.3d 63, 70 (2d Cir. 2000) (observing that similar regulatory roles of Federal Deposit Insurance Corporation, Federal Savings and Loan Insurance Corporation and Resolution Trust allow for interchangeable case law analysis).

[7] Although not a disputed issue in the present case, it is generally recognized that third party transferees and assignees of the Federal Deposit Insurance Corporation and Resolution Trust enjoy the same protections of 12 U.S.C. § 1823 (e) and the *D'Oench, Duhme* doctrine. See *Federal Financial Co.* v. *Hall*, 108 F.3d 46, 49 (4th Cir.), cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102 (1997); *Federal Deposit Ins. Corp.* v. *Bledsoe*, 989 F.2d 805, 811 (5th Cir. 1993); *Newton* v. *Uniwest Financial Corp.*, 967 F.2d 340, 347 (9th Cir. 1992); *AAI Recoveries, Inc.* v. *Pijuan*, 13 F. Sup. 2d 448, 451 (S.D.N.Y. 1998).

"[OCI] moved to correct various portions of the attorney trial referee's report. The attorney trial referee, however, denied the majority of [OCI's] requests. [OCI] then filed exceptions to the attorney trial referee's report, as well as an objection to the acceptance of the report.

"The trial court sustained [OCI's] objection to the acceptance of the attorney trial referee's report. The [trial] court ruled that, pursuant to 12 U.S.C. § 1823 (e), [Resolution Trust] is entitled to the same protection as the Federal Deposit Insurance Corporation (FDIC). According to 12 U.S.C. § 1823 (e), [n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any depository institution, shall be valid against the [FDIC] unless such agreement . . . [is] executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with acquisition of the asset by the depository institution. The [trial] court concluded that because the execution of the defendants' mortgage and the execution of the subordinated debenture agreement were not contemporaneous, the subordinated debenture agreement was not valid against [Resolution Trust], and, therefore, it was not valid against [Resolution Trust's] assignees. The trial court remanded the case to the attorney trial referee, directing the referee to proceed in a manner not inconsistent with the trial court's memorandum of decision." (Internal quotation marks omitted.) *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 670–71.

The defendants appealed from that decision to the Appellate Court, which dismissed the appeal, concluding that, because the trial court had sustained the objection to the attorney trial referee's report and ordered that the case " 'proceed in a manner not inconsistent with' " that determination, no appealable final judgment

had been rendered. *OCI Mortgage Corp.* v. *Marchese*, 48 Conn. App. 750, 752–54, 712 A.2d 449 (1998). Thereafter, the parties entered into a stipulation in order to obtain a final judgment from which the defendants properly could appeal, and, in accordance with that stipulation, the trial court rendered a judgment of strict foreclosure. The defendants then appealed from that judgment to the Appellate Court. See *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 672.

The Appellate Court determined that the balance of the mortgage note had been set off against the subordinated debenture by operation of law and that, therefore, no agreement existed as a predicate to the application of 12 U.S.C. § 1823 (e). Id., 679. Similarly, the Appellate Court concluded that the setoff had extinguished the mortgage note, thereby eliminating it as an asset of the association, before the association had been declared insolvent. Id. In addition, the court determined that the mortgage note and the debenture had been "sufficiently bound together to constitute a bilateral agreement for purposes of avoiding [12 U.S.C. § 1823 (e) and] the *D'Oench, Duhme* doctrine." Id., 682. Finally, citing equitable considerations, the court concluded that allowing OCI to foreclose on the mortgage when the defendants had been owed far more than the balance due on the note by OCI's predecessor in interest would "[shock] the judicial conscience." Id., 683. The Appellate Court reversed the judgment of strict foreclosure and remanded the case with direction to render judgment for the defendants. Id.

We granted OCI's petition for certification, limited to the following issue: "Did the Appellate Court properly conclude that 12 U.S.C. § 1823 (e) and the doctrine of *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, [supra, 315 U.S. 447], did not apply to the defendants so as to bar their defenses of setoff and payment of the

mortgage note?" *OCI Mortgage Corp.* v. *Marchese*, 253 Conn. 903, 753 A.2d 937 (2000). This appeal followed.

I

This case has its origins in the widespread failure of banks and savings and loan associations during the mid-1980s and early 1990s. The federal government, as the insurer of these institutions through the FDIC and the Federal Savings and Loan Insurance Corporation and its successor, Resolution Trust; see footnote 6 of this opinion; stepped in to bail out the vast majority of these failed institutions. See 1 Federal Deposit Insurance Corporation, Managing the Crisis: The FDIC and RTC Experience 1980–1994 (1998) pp. 4–5 (Managing the Crisis) (noting that at height of banking crisis between 1988 and 1992, there was average of one federally insured bank or savings and loan association failure per day). The FDIC and Resolution Trust successfully controlled, liquidated and resolved literally thousands of federally insured banks and savings and loan associations and, while avoiding any major disruptions, managed to stabilize the nation's banking system. Id., pp. 4, 46.

"The Financial Institutions Reform, Recovery and Enforcement Act of 1989 . . . gives the receivers of failed savings and loan institutions wide-ranging powers to consolidate and liquidate those institutions." *Nashville Lodging Co.* v. *Resolution Trust Corp.*, 59 F.3d 236, 241 (D.C. Cir. 1995). As the receiver of a failed savings and loan association, Resolution Trust attempts to maximize the return for its assets, often selling them as quickly as possible for the highest available price. See *Suffield Bank* v. *Berman*, 228 Conn. 766, 778, 639 A.2d 1033 (1994) (discussing FDIC's role as receiver of failed bank); see also 12 U.S.C. § 1821 (d) (13) (E); Managing the Crisis, supra, p. 8; 11 Am. Jur. 2d 181, Banks and Financial Institutions § 1062 (1997). One significant weapon in Resolution Trust's arsenal for

achieving its objectives is the *D'Oench, Duhme* doctrine, codified at 12 U.S.C. § 1823 (e). Prior to the enactment of § 1823 (e) in 1950, *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, supra, 315 U.S. 447, was the leading case in this field, holding that certain side agreements that would have the effect of deceiving bank examiners in reviewing a failed institution's records could not be the basis of a defense against the FDIC. *Langley* v. *Federal Deposit Ins. Corp.*, 484 U.S. 86, 92, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987).

In *D'Oench, Duhme & Co.*, a securities dealer had sold bonds to a bank and later defaulted on those bonds. See *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, supra, 315 U.S. 454. In order to accommodate the bank and allow it to avoid showing the defaulted bonds on its books, the securities dealer gave the bank promissory notes with a separate understanding that they would never be repaid. Id. The parties had included a written receipt evidencing their agreement that the notes would not be called for payment. Id. The FDIC subsequently acquired one of the notes as collateral for a loan that it had issued to the failing bank and attempted to collect from the securities dealer. Id., 453–54. In rejecting the securities dealer's defense of lack of consideration for the note, the United States Supreme Court held that, because the securities dealer had lent itself to a scheme to mislead the FDIC, it could not assert that defense to deny liability on the note. Id., 460. The court reasoned that, "one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners." Id. Given the federal policy of protecting the FDIC from misrepresentations relating to the records of banks that it insures, the court stated that "[t]he test is whether the note was designed to deceive the creditors or the public authority or would tend to

have that effect." Id.; see also *Duraflex Sales & Service Corp.* v. *W.H.E. Mechanical Contractors*, 110 F.3d 927, 932 (2d Cir. 1997) ("[p]ut simply, the *D'Oench, Duhme* doctrine precludes obligors from asserting side deals or secret agreements which may mislead bank examiners against [Resolution Trust]" [internal quotation marks omitted]).

Title 12 of the United States Code, § 1823 (e), expanded the common-law *D'Oench, Duhme* doctrine and "Congress opted for the certainty of the requirements set forth in § 1823 (e)." *Langley* v. *Federal Deposit Ins. Corp.*, supra, 484 U.S. 95; see also *Federal Deposit Ins. Co.* v. *State Bank of Virden*, 893 F.2d 139, 143 (7th Cir. 1990) (noting that § 1823 [e] gives "statutory backing to the holding of *D'Oench, Duhme [& Co.]* that oral side agreements do not bind the FDIC" or Resolution Trust); *Gunter* v. *Hutcheson*, 674 F.2d 862, 872 n.14 (11th Cir.), cert. denied, 459 U.S. 826, 103 S. Ct. 60, 74 L. Ed. 2d 63 (1982) (concluding that § 1823 [e], as Congress' response to holding in *D'Oench, Duhme & Co.* represents broadening protection for FDIC founded on federal policies of protecting banking system).

"One purpose of § 1823 (e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley* v. *Federal Deposit Ins. Corp.*, supra, 484 U.S. 91. While examining an institution's records in conjunction with a liquidation of its assets, or other means of handling the insolvency,[8] the FDIC and Resolution Trust must move "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and

---

[8] The FDIC and Resolution Trust formulated a variety of approaches for handling financial institution insolvencies, including purchase and assumption transactions, the use of bridge banks, deposit payoffs and forbearance programs. See generally Managing the Crisis, supra, pp. 13–28 (discussing various means of resolving bank and savings and loan association failures).

avoid an interruption in banking services." (Internal quotation marks omitted.) Id.; see also *Volges* v. *Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994), cert. denied, 515 U.S. 1162, 115 S. Ct. 2618, 132 L. Ed. 2d 860 (1995) ("[o]ne of [Resolution Trust's] primary functions is to dispose of a failed institution's assets in a way that 'maximizes the net present value return from the sale or other disposition' of assets under its control"). In addition, the statutory requirements of 12 U.S.C. § 1823 (e); see footnote 1 of this opinion; "ensure the mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley* v. *Federal Deposit Ins. Corp.*, supra, 92.

Some courts and commentators have recognized that the common-law holding in *D'Oench, Duhme & Co.* and the provisions of 12 U.S.C. § 1823 (e) embody the same principle, and hence, require a similar, if not identical, analytical approach; see, e.g., *Resolution Trust Corp.* v. *Dunmar Corp.*, 43 F.3d 587, 593 (11th Cir.), cert. denied, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995) ("The purposes underlying the [*D'Oench, Duhme*] doctrine and § 1823 [e] [are] the same, thus permitting utilization of the same analysis under each. . . . Accordingly, cases interpreting the common law doctrine as well as its statutory counterpart are applicable precedent." [Citations omitted.]);[9] while others care-

[9] See also F. Galves, "Might Does Not Make Right: The Call for Reform of the Federal Government's *D'Oench, Duhme* and 12 U.S.C. § 1823 (e) Superpowers in Failed Bank Litigation," 80 Minn. L. Rev. 1323, 1355 (1996) (noting that common law set forth in *D'Oench, Duhme & Co.* and § 1823 [e] have "merged into a single, powerful doctrine"); J. Echevarria, "A Precedent Embalms a Principle: the Expansion of the *D'Oench, Duhme* Doctrine," 43 Cath. U. L. Rev. 745, 793 (1994) (noting that *D'Oench, Duhme & Co.* decision, 12 U.S.C. § 1823 [e] and subsequent case law "have become a seamless web"); note, "Defending the Indefensible: Exceptions to *D'Oench* and 12 U.S.C. § 1823 (e)," 63 Fordham L. Rev. 1337, 1355 (1995) ("common law and statutory doctrines are directed to the same evils and share the same principles").

fully have distinguished between the common-law holding in *D'Oench, Duhme & Co.* and the statutory provision. See, e.g., *Resolution Trust Corp.* v. *Midwest Federal Savings Bank*, 36 F.3d 785, 793–94 (9th Cir. 1993) (addressing claims under common-law doctrine and 12 U.S.C. § 1823 [e] separately); accord *Federal Deposit Ins. Corp.* v. *O'Neil*, 809 F.2d 350, 353 (7th Cir. 1987) (noting that 12 U.S.C. § 1823 [e] "makes the common law principle both more encompassing and more precise"). In addition, the common-law holding in *D'Oench, Duhme & Co.* had been expanded in some federal circuits to afford, as a matter of federal common law, holder in due course status to the FDIC and Resolution Trust. See generally *Gunter* v. *Hutcheson*, supra, 674 F.2d 874; see also *Resolution Trust Corp.* v. *Maplewood Investments*, 31 F.3d 1276, 1290 n.28 (4th Cir. 1994) (noting that *D'Oench, Duhme & Co.* decision and holder in due course protections are matters of federal common law); *Resolution Trust Corp.* v. *Marshall*, 939 F.2d 274, 278 (5th Cir. 1991) (Resolution Trust is holder in due course as matter of federal law); but see *Federal Deposit Ins. Corp.* v. *Houde*, 90 F.3d 600, 605 n.5 (1st Cir. 1996) (federal holder in due course doctrine applicable only to FDIC in certain circumstances).

Whether either of these federal common-law doctrines remains a viable source for consideration in a case such as this is questionable after subsequent decisions of the United States Supreme Court in *O'Melveny & Meyers* v. *Federal Deposit Ins. Corp.*, 512 U.S. 79, 85, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994) (refusing to create federal common-law rule "to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 are presumably left subject to the disposition provided by state law") and *Atherton* v. *Federal Deposit Ins. Corp.*, 519 U.S. 213, 225–27, 117 S. Ct. 666, 136 L. Ed. 2d 656

(1997) (finding "no significant conflict with, or threat to, a federal interest" that would require federal common-law rule for gross negligence; 12 U.S.C. § 1821 [k] does not supplant state law). Currently, there is a split among the federal circuit courts of appeals that have addressed the issue. Compare *Federal Deposit Ins. Corp.* v. *Deglau*, 207 F.3d 153, 171 (3d Cir. 2000) (*D'Oench, Duhme* doctrine is not applicable common law in light of *O'Melveny & Meyers* and *Atherton*; § 1823 [e] is comprehensive and detailed and *D'Oench, Duhme* doctrine need not supplement it as separate common-law doctrine), *DiVall Insured Income Fund, L.P.* v. *Boatmen's First National Bank*, 69 F.3d 1398, 1402 (8th Cir. 1995) (holding that *O'Melveny & Meyers* removes federal common-law *D'Oench, Duhme* doctrine and federal holder in due course doctrine as separate bars to defenses against FDIC) and *Murphy* v. *Federal Deposit Ins. Corp.*, 61 F.3d 34, 40 (D.C. Cir. 1995) (*O'Melveny & Meyers* removes federal common-law *D'Oench, Duhme* doctrine) with *Murphy* v. *Federal Deposit Ins. Corp.*, 208 F.3d 959, 964 (11th Cir. 2000) (" 'Congress did not intend [Financial Institutions Reform, Recovery and Enforcement Act of 1989] to displace the *D'Oench* [*Duhme*] doctrine, but rather intended to continue the harmonious, forty-year coexistence of [§ 1823 (e)] and the *D'Oench* [*Duhme*] doctrine' "), *Federal Financial Co.* v. *Hall*, 108 F.3d 46, 49 (4th Cir.), cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102 (1997) (noting that *D'Oench, Duhme* doctrine may be one of few federal common-law rules viable after *O'Melveny & Meyers*), *Inn at Saratoga Associates* v. *Federal Deposit Ins. Corp.*, 60 F.3d 78, 82 (2d Cir. 1995) (although "asset" requirement for application of § 1823 [e] not satisfied, common-law equitable estoppel rule in *D'Oench, Duhme & Co.* applied) and *Federal Deposit Ins. Corp.* v. *McClanahan*, 795 F.2d 512, 514 n.1 (5th Cir. 1986) (no reason to suppose that Congress intended to supplant

common-law *D'Oench, Duhme* doctrine of estoppel with § 1823 [e]); accord *Ledo Financial Corp.* v. *Summers,* 122 F.3d 825, 829 n.2 (9th Cir. 1997) (not reaching question of whether *D'Oench, Duhme* doctrine overruled by *O'Melveny & Meyers* and *Atherton*); *Federal Deposit Ins. Corp.* v. *Houde,* supra, 90 F.3d 605 n.5 (noting split in circuits regarding viability of federal common-law holder in due course doctrine).

We need not resolve the matter, however, because the Appellate Court did not draw a distinction, instead referring to both 12 U.S.C. § 1823 (e) and the *D'Oench, Duhme & Co.* decision "collectively." *OCI Mortgage Corp.* v. *Marchese,* supra, 56 Conn. App. 672. Moreover, the provisions of § 1823 (e) obviate the need to do so under the facts of the present case. That is, because we conclude herein that the requirements of § 1823 (e) have not been met, it is unnecessary for this court to consider whether the common-law *D'Oench, Duhme* doctrine would stand as a separate bar to the defendants' claims. See *Langley* v. *Federal Deposit Ins. Corp.,* supra, 484 U.S. 95 ("An agreement that meets [the requirements of § 1823 (e)] prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise.").

## II

Our scope of review in the present appeal is familiar: whether the Appellate Court properly concluded that 12 U.S.C. § 1823 (e) and the *D'Oench, Duhme* doctrine did not apply in this case is a question of law subject to plenary review. *Powers* v. *Olson,* 252 Conn. 98, 105, 742 A.2d 799 (2000); *Steelcase, Inc.* v. *Crystal,* 238 Conn. 571, 577, 680 A.2d 289 (1996).

## A

The Appellate Court determined that the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823 (e) did not apply

because there was neither an "agreement" nor an "asset" at the time the association went bankrupt. That determination was premised on the court's conclusion that the defendants' mortgage note had been set off as a matter of law against the entire subordinated debenture before Resolution Trust took control of the association in receivership. See *OCI Mortgage Corp.* v. *Marchese,* supra, 56 Conn. App. 679. OCI contends that, in reversing the trial court's judgment of strict foreclosure, the Appellate Court "blurred the distinction between a completed setoff and an inchoate setoff right." OCI maintains that a setoff could not have occurred as a matter of law prior to the association's insolvency because: (1) the debenture was, by its own terms, subordinated to other debts of the association; and (2) the explicit language of the subordinated debenture agreement, with which the defendants failed to comply, delineated the means by which the defendants could have accelerated the debenture. The defendants argue that, because the association had defaulted on the debenture by failing to make the quarterly interest payments thereon, the setoff occurred automatically upon default, "regardless of any contractual language" in the subordinated debenture agreement. We agree with OCI.

In Connecticut, a setoff may be legal or equitable in nature. See *Connecticut Bank & Trust Co.* v. *Winters,* 225 Conn. 146, 162, 622 A.2d 536 (1993); *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 211, 33 A.2d 126 (1943). Legal setoff is governed by General Statutes § 52-139 et seq. and involves mutual debts between parties in any action: (1) to recover on a debt pursuant to § 52-139; (2) by an assignee of a nonnegotiable chose in action pursuant to General Statutes § 52-140; (3) for trespass to real or personal property or other tort committed without force pursuant to General Statutes § 52-141; or (4) involving joint debtors pursuant

to General Statutes § 52-142. See also Practice Book § 10-54.

When the statutes governing legal setoff do not apply, a party may be entitled to equitable setoff, nonetheless, "only to 'enforce the simple but clear natural equity' " in a given case. *Connecticut Bank & Trust Co.* v. *Winters*, supra, 225 Conn. 162, quoting *Spurr* v. *Snyder*, 35 Conn. 172, 174 (1868). "The right to setoff, although it may arise out of a written instrument, is a common law equitable right that is not itself a written instrument." *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 494, 646 A.2d 1289 (1994).

An action to foreclose on a mortgage, circumscribed by statute; see General Statutes § 49-1 et seq.; is an equitable proceeding; *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 256–57, 708 A.2d 1378 (1998); *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 172, 659 A.2d 138 (1995); and as such, does not implicate the statutes governing setoff. Cf. *Savings Bank of New London* v. *Santaniello*, supra, 130 Conn. 211 (noting that strict foreclosure is not action on debt invoking statutory setoff and assuming, without deciding, that defendant had right to file cross complaint for equitable setoff).

Although we have discerned "no meaningful distinction" between setoff rights that may derive from common-law principles and contract versus those that are moored in statute; *Fleet Bank Connecticut, N.A.* v. *Carillo*, 240 Conn. 343, 351 n.10, 691 A.2d 1068 (1997); " '[i]t is clear that a setoff does not occur automatically' " but, rather, it must be exercised affirmatively. *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 505.

In the usual case, setoff is "[t]he equitable right to cancel or offset mutual debts or cross demands . . .

[and is] commonly used by a bank in reducing a customer's checking or other deposit account in satisfaction of a debt the customer owes the bank." (Internal quotation marks omitted.) *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 352. Setoff rights "are simply the vehicles by which a creditor may access bank accounts owned by its debtor" or cancel mutual debts. Id., 351–52 n.10. We previously have determined that a right of setoff in the deposit account context is effectuated "only after [a bank] has performed some binding overt act and has made a record to evidence that action. . . . [C]onsistent with the certainty and predictability required by banking operations in the commercial world, the act must be unequivocal, objectively ascertainable and final in order to be overt and binding." (Citation omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 506; see *Citizens Bank of Maryland* v. *Strumpf*, 516 U.S. 16, 18–19, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995); see also *Federal Deposit Ins. Corp.* v. *Marine Midland Realty Credit Corp.*, 17 F.3d 715, 722 (4th Cir. 1994) (claim for setoff must exist before insolvency; liability must be absolute and certain, and claim timely made); *Federal Deposit Ins. Corp.* v. *State Bank of Virden*, supra, 893 F.2d 143 (setoffs accomplished before assignment of debt to FDIC not automatically barred by § 1823 [e]).

The Appellate Court determined that, following the association's default on the interest payments under the terms of the subordinated debenture agreement, the "defendants formally demanded full payment on the debenture and informed [the association] of their intention to exercise their right to set off the mortgage." (Internal quotation marks omitted.) *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 670. The court based this conclusion on the letter sent to the association by the defendants' attorney on November 14, 1989, which provided "written notice pursuant to § 10.01 of

the [subordinated debenture] agreement [and stated that] if the default was not cured, the defendants '*will exercise* all rights available to them not only under Section 10.02 of the foregoing [s]ubordinated [d]ebenture [a]greement, but also under statutory and common law.' " (Emphasis added.) Id., 676 n.3. As the Appellate Court noted, however, the subordinated debenture agreement defined events that constituted default thereunder and provided procedures for accelerating the debt if the association were to default. Id. The parties do not dispute that the language of the subordinated debenture agreement contemplated that a second notice, notice of acceleration of the debt, would be sent to the association after the initial notice of default and that no such notice of acceleration was provided prior to the association's insolvency. See id. The defendants argue that, consistent with the Appellate Court's conclusion, the contractual provisions are "irrelevant" because the association was in default and the setoff occurred by operation of law. Id.

This court has long recognized that "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000); see also *Olean* v. *Treglia*, 190 Conn. 756, 768–70, 463 A.2d 242 (1983) ("[j]udicial deference to freedom of contract is particularly appropriate in a case . . . where a private lender and a private borrower can be presumed to have had equal access to the financial marketplace when the [agreement] was first negotiated"; due-on-sale clause in

mortgage enforceable; mortgage properly accelerated where intent to exercise option to accelerate was " 'crystal clear' "). Were we to accept the Appellate Court's conclusion that the acceleration provisions in the subordinated debenture agreement were irrelevant, we essentially would eviscerate portions of the contract governing the subordinated debenture between the association and the defendants. The defendants necessarily rely on this contract, however, in support of their setoff claim.

The Appellate Court relied on *Murphy* v. *Federal Deposit Ins. Corp.*, 38 F.3d 1490 (9th Cir. 1994), in its decision that the setoff had occurred by operation of law. In *Murphy*, the plaintiff, who was a beneficiary of a letter of credit, owed $100,000 on a promissory note secured from a bank. Id., 1496. The bank had issued letters of credit to the plaintiff to use as collateral for obligations with one of his commercial suppliers. Id., 1495. Following presentment and dishonor of the letters of credit, the supplier assigned the $585,000 letters of credit back to the plaintiff. Id., 1505. Eight months after the dishonor and assignment of the letters of credit, the bank failed and the FDIC sought to collect on the note while refusing to pay the letters of credit. Id., 1497.

The Ninth Circuit Court of Appeals determined that "set-offs arising by operation of law are not automatically barred by § 1823 (e), although a particular set-off, if it amounts to a claim based on breach of an agreement, may be barred." Id., 1504–1505. The court concluded that, because the jury had determined that the plaintiff's supplier had complied strictly with the presentment requirements of the letters of credit, the plaintiff was entitled to set off the $100,000 note against the $585,000 owing on the letters of credit. Id., 1505.

In the present case, although the defendants and the association had agreed to set off quarterly interest pay-

ments on the debenture against three months of payments on the mortgage note, the only way that the entire mortgage note balance could have been set off against the full amount of the subordinated debenture was if the debenture had been accelerated. As previously noted, the defendants never forwarded the required notice of acceleration under the terms of their agreement prior to the association's insolvency. These facts distinguish the present case from *Murphy* v. *Federal Deposit Ins. Corp.*, supra, 38 F.3d 1505. The letters of credit therein had been presented and dishonored to make them fully payable as a liability of the bank. Id. In the present case, the defendants never accelerated the subordinated debenture; the only notice that they had provided indicated that they would do so if the failure of the association to tender that quarter's interest payment was not cured within the fifteen days provided in § 10.01 of the subordinated debenture agreement. See *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 676 n.3.

In addition, the subordinated debenture agreement provided that no payment of principal may be accelerated without the approval of the Federal Savings and Loan Insurance Corporation, if after giving effect to such payment the association would fail to meet the net worth requirements of the applicable federal regulations.[10] There is no evidence in the record to suggest that the defendants received that approval to accelerate and thereby set off the full amount of the debenture. See, e.g., *Federal Deposit Ins. Corp.* v. *de Jesus Velez*, 678 F.2d 371, 375 (1st Cir. 1982) (even if 12 U.S.C. § 1823 [e] had been followed, agreement to set off debentures against notes would be void as against public policy for circumventing FDIC approval requirement for payment of debentures). Although setoff rights do not necessarily require a written instrument, the defendants'

[10] See footnote 5 of this opinion.

claim in this case "arise[s] from a written instrument," and their failure to comply with the terms of the subordinated debenture agreement for accelerating the debt precludes any setoff herein. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 494. Accordingly, we conclude that the Appellate Court improperly determined that the debenture was set off against the mortgage note as a matter of law.[11]

## B

OCI next argues that the Appellate Court improperly concluded, as a further basis for its decision, that the subordinated debenture agreement and the mortgage note had been "sufficiently bound together to constitute

---

[11] Because we agree with OCI that the Appellate Court improperly concluded that the setoff had occurred automatically without reference to the acceleration provisions in the subordinated debenture agreement, we need not address whether the setoff also was improper because of the subordinated nature of the debentures. See generally *Federal Deposit Ins. Corp.* v. *Texarkana National Bank*, 874 F.2d 264, 269 (5th Cir. 1989), cert. denied, 493 U.S. 1043, 110 S. Ct. 837, 107 L. Ed. 2d 833 (1990) (setoff inappropriate where debentures not mutually extinguishable with notes "because the debentures were specifically made subordinate to the claims of all other depositors and creditors of the bank"); *Federal Deposit Ins. Corp.* v. *de Jesus Velez*, supra, 678 F.2d 376 (no setoff permitted where notes and debentures "not mutually extinguishable").

In addition, due to its conclusion that a setoff had been completed as a matter of law prior to the association's insolvency, the Appellate Court reasoned that no agreement existed for an application of the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823 (e). See *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 679. We reach a contrary conclusion in part II C of this opinion. The Appellate Court also reasoned that the setoff had extinguished the mortgage note as an asset of the association at the time of its insolvency. See id. Again, because the debenture had not been accelerated and, for that reason, no setoff occurred in this case, we reach the opposite conclusion. The mortgage note remained intact as a facially valid asset of the association at the time it failed. See *Alaska Southern Partners* v. *Prosser*, 972 P.2d 161, 164 (Alaska 1999) (loans are assets acquired by FDIC); *Federal Deposit Ins. Corp.* v. *Adams*, 187 Ariz. 585, 591, 931 P.2d 1095 (App. 1996) ("[i]t is well-settled that borrowers are precluded from disproving the existence of an 'asset' by resort to evidence that does not meet the stringent standards of § 1823 [e]").

a bilateral agreement for purposes of avoiding the *D'Oench, Duhme* doctrine." *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 682. We agree with OCI.[12] The mortgage note, the subordinated debenture agreement and the subsequent agreement to apply the interest on the debenture to the payments due under the mortgage note were entered into on separate occasions without any single governing document reflecting their connection. Although we recognize that a single, bilateral contract may be valid because it *may* satisfy the requirements of 12 U.S.C. § 1823 (e); *Howell* v. *Continental Credit Corp.*, 655 F.2d 743, 747 (7th Cir. 1981) (bilateral obligations in one document may serve as source of defense against FDIC; *D'Oench, Duhme* doctrine and § 1823 [e] apply only where defenses to facially valid notes and guarantees are based on undisclosed agreements); the mortgage note and separate subordinated debenture agreement in *this* case were not consolidated in a manner that would compel the conclusion that they embodied a single, bilateral agreement. See *Appliances, Inc.* v. *Yost*, 181 Conn. 207, 210–11, 435 A.2d 1 (1980) ("a promissory note is nothing more than a written contract for the payment of money"); see also *Community Bank of the Ozarks* v. *Federal Deposit Ins. Corp.*, 984 F.2d 254, 259 (8th Cir. 1993) (bilateral agreement exception is narrow one); *Federal Deposit Ins. Corp.* v. *Aetna Casualty & Surety Co.*, 947 F.2d 196, 206 (6th Cir. 1991) (blanket bonds, unlike promissory notes, impose bilateral obligations); *Resolution Trust Corp.* v. *J.B. Centron Development Co.*, 92 Ohio App. 3d 643, 648, 637 N.E.2d 23 (1993) ("[I]f an agreement

---

[12] We note that, as authority for the proposition that the mortgage, subordinated debenture agreement and subsequent interest payment arrangement had been bound into one bilateral agreement, the Appellate Court relied upon the report of the trial referee, to which the trial court had sustained OCI's objection. *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 682. The defendants rely solely upon the Appellate Court's opinion to support their argument.

is bilateral, rather than unilateral, Section 1823 [e] may not apply. . . . Promissory notes, however, are unilateral contracts." [Citations omitted.]). The Appellate Court improperly concluded otherwise.

## C

OCI next contends that, because a set off did not occur by operation of law prior to the association's insolvency, the defendants' right to exercise a setoff thereafter was "cut off" by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823 (e). The defendants rely on the same arguments that support their theory of setoff and contend that, because "there was a default on the payment of the [subordinated] debenture agreement which operated to extinguish the defendants' debt [on the mortgage note] by reason of setoff, and that setoff occurred upon the default," § 1823 (e) could not apply. We conclude that § 1823 (e) applies and that, because the defendants failed to meet its requirements, they are precluded from asserting, as a defense to OCI's strict foreclosure action on the mortgage, any agreement not memorialized that would allow them to exercise a setoff now.[13]

Title 12 of the United States Code, § 1823 (e), provides that "[n]o agreement which tends to diminish or defeat

---

[13] It generally is recognized that the rights and liabilities of a financial institution are fixed at the time that institution is declared insolvent by the banking authorities. See *American National Bank* v. *Federal Deposit Ins. Corp.*, 710 F.2d 1528, 1540 (11th Cir. 1983); *Federal Deposit Ins. Corp.* v. *Grella*, 553 F.2d 258, 262 (2d Cir. 1977); *Bayshore Executive Plaza Partnership, LLC* v. *Federal Deposit Ins. Corp.*, 750 F. Sup. 507, 511 (S.D. Fla. 1990), aff'd, 943 F.2d 1290 (11th Cir. 1991) (per curiam).

As noted previously, because 12 U.S.C. § 1823 (e) applies and directs our decision in this case, we need not decide whether federal common-law doctrines embodied in and stemming from the *D'Oench, Duhme & Co.* decision remain intact. See part I of this opinion; see also *Weber* v. *New West Federal Savings & Loan Assn.*, 10 Cal. App. 4th 97, 107 n.6, 12 Cal. Rptr. 2d 468 (1992) (comparing common-law *D'Oench, Duhme* doctrine and § 1823 [e]).

the interest of the [FDIC] in any asset acquired by it under this section . . . shall be valid against the [FDIC] unless such agreement—(A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution."

It is clear that "[a] condition to payment of a note . . . is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823 (e) attach." *Langley* v. *Federal Deposit Ins. Corp.*, supra, 484 U.S. 96. At some time subsequent to the execution of the subordinated debenture agreement, the association and the defendants "agreed that the defendants' mortgage note would be paid by applying [the association's] interest payments on the debenture to the defendants' monthly mortgage payments." (Internal quotation marks omitted.) *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 670. The parties in this case stipulated that the defendants and the association had "agreed" to satisfy the monthly payments due under the mortgage by applying the quarterly interest payments on the debenture thereto.[14] This agreement,

---

[14] In addition, we note that the defendants argued before the trial court, in conjunction with their affirmative defense of "accident, mistake and/or fraud," which they abandoned on appeal, that they had entered into the mortgage "with the understanding" that the interest on the debentures would be applied to pay off the mortgage note. The defendants argued that they "would not have entered into the mortgage agreement . . . had they known that [the association] would not apply the interest due on the debentures, or part of the principal . . . to the mortgage . . . ." Although not conclusive on the matter, these statements bolster our conclusion that the defendants understood that they would not be required to make affirmative

essentially tying the monthly mortgage payments to the debenture interest paid quarterly, significantly altered the terms of both the mortgage note and the debenture, and, according to the defendants, relieved them of any obligation to keep the monthly mortgage payments current in the event of the association's default on the debenture. We conclude that this agreement conditioned the defendants' obligation, as long as the debenture remained outstanding and interest payments were due thereon, to take affirmative steps to ensure that their monthly mortgage payments were current. It is precisely the type of side agreement contemplated by 12 U.S.C. § 1823 (e). The defendants may succeed only if they meet the requirements of the statute. See *Langley* v. *Federal Deposit Ins. Corp.*, supra, 91–92 ("[n]either the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions"); see also *Federal Deposit Ins. Corp.* v. *Bowles Livestock Commission Co.*, 739 F. Sup. 1364, 1370 (D. Neb. 1990), rev'd on other grounds, 937 F.2d 1350 (8th Cir. 1991) ("course of conduct and understanding" between bank and debtor is agreement for purposes of § 1823 [e]). Unless it satisfies 12 U.S.C. § 1823 (e), such an agreement is invalid because it would diminish Resolution Trust's, and hence, OCI's,

---

payments on the mortgage in light of the outstanding debenture. See *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 203–204, 663 A.2d 1001 (1995) (" 'a superseded pleading remains in the case as a part of its history and is available to the adverse party as an admission' "); *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 248–49, 492 A.2d 164 (1985) (judicial admissions in withdrawn or superseded pleadings still admissible).

Furthermore, aside from the temporal malady from which the defendants' argument suffers, the defendants assume that OCI herein is the proper party against whom to assert their claim for setoff. See *Nashville Lodging Co.* v. *Resolution Trust Corp.*, supra, 59 F.3d 247. In fact, the defendants filed a timely proof of claim with Resolution Trust for administration of the debenture as a liability of the association. The record does not disclose the ultimate resolution of that claim in receivership.

interest in the mortgage note. See *Alaska Southern Partners* v. *Prosser*, 972 P.2d 161, 164 (Alaska 1999) (§ 1823 [e] "nullifies undocumented agreements that could diminish a loan's worth by altering the terms of payment reflected in the bank's loan file"); *Federal Deposit Ins. Corp.* v. *O'Malley*, 163 Ill. 2d 130, 148–49, 643 N.E.2d 825 (1994), cert. denied, 515 U.S. 1130, 115 S. Ct. 2554, 132 L. Ed. 2d 808 (1995) ("no asset" exception to § 1823 [e] cannot be invoked where payment depends upon agreement not reflected in bank records).

In concluding that the debenture and the mortgage note had been set off as a matter of law, the Appellate Court recognized that "the note, the debenture and the payments of the mortgage note by the application of the debenture interest to the mortgage note [were] all in the [association's] records." *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 679. We conclude that any documents in the association's records evidencing the agreement to apply the debenture interest to the sums due on the mortgage note do not satisfy the first two requirements of 12 U.S.C. § 1823 (e). See 12 U.S.C. § 1823 (e) ("[n]o agreement [to apply the debenture interest to the sums due on the mortgage note] . . . shall be valid . . . unless such agreement . . . (A) is in writing, [and] (B) was executed . . . contemporaneously with the acquisition of the asset"); *Resolution Trust Corp.* v. *BVS Development, Inc.*, 42 F.3d 1206, 1213–14 (9th Cir. 1994) (noting that § 1823 [e] generally invalidates any rights based on alleged oral discussions or secret agreements not documented in records); *Community Bank of the Ozarks* v. *Federal Deposit Ins. Corp.*, supra, 984 F.2d 257 (neither § 1823 [e], nor *D'Oench, Duhme* doctrine satisfied by inferences from bank's records); *Beighley* v. *Federal Deposit Ins. Corp.*, 868 F.2d 776, 783–84 (5th Cir. 1989) (where no single document provides terms of agreement, mere reference

in various bank records does not satisfy writing requirement of § 1823 [e]).

The defendants and the association executed the mortgage note on September 13, 1985. The subordinated debenture agreement was not executed until January 15, 1987. At some indefinite time thereafter, the defendants and the association agreed to apply the interest payments in the manner discussed previously.[15] There is no written document evidencing the agreement to apply the interest on the debenture to the mortgage payments, nor is there any document referring to the mortgage note and the debenture that could be read as incorporating both into a subsequent agreement. See *E & F Construction Co.* v. *Rissil Construction Associates, Inc.*, 181 Conn. 317, 319, 435 A.2d 343 (1980) (noting that when signatories execute contract referring to another instrument therein, two instruments may be read together as agreement of parties); *RTC Mortgage Trust 1994-S3* v. *Guadalupe Plaza*, 918 F. Sup. 1441, 1447–48 (D.N.M. 1998) (insufficient evidence of any reasonable explicit written agreement in bank's records that separated note, mortgage and lease constituted one transaction); see also *Beighley* v. *Federal Deposit Ins. Corp.*, supra, 868 F.2d 783 n.11 (reference to loan in minutes of bank board meeting and other records of bank do not "by any stretch of the imagination" constitute agreement executed contemporaneously with loan). Because we conclude that neither the writing nor the contemporaneity contemplated under § 1823 (e) is

---

[15] See part II B of this opinion. The trial court, in sustaining OCI's objection to the attorney trial referee's report, recognized that the mortgage note and subordinated debenture agreement had been executed some sixteen months apart and that, therefore, the requirement that the agreement be executed "contemporaneously" with the acquisition of the mortgage note had not been satisfied.

fulfilled in this case, we need not consider whether the final two requirements of the statute are satisfied.[16]

"When the failure to put in writing what was said orally is the gravamen of the objection to the bank's conduct, it comes within both the letter and spirit of § 1823 (e)." *Federal Deposit Ins. Corp.* v. *State Bank of Virden,* supra, 893 F.2d 143. For the defendants to prevail under a setoff theory now, after the association's insolvency, this court would be required to conclude that: (1) the debenture had been accelerated at some point and for some reason regardless of the notice and approval provisions therein and irrespective of the fact that the association had entered receivership almost one month after the defendants sent the first notice of default; and (2) the agreement tying the mortgage note and the debenture, which effectively modified both and purportedly relieved the defendants of the obligation to make any monthly payments on the mortgage note as long as the debenture remained outstanding, satisfies 12 U.S.C. § 1823 (e). We reach neither conclusion in this case. Accordingly, because the defendants agreed to tie their obligations under the mortgage note to the association's obligations under the debenture and that agreement does not meet the requirements of § 1823 (e), they are precluded from asserting it against OCI in this foreclosure action.

## D

Finally, OCI claims in its brief that "in what [is] manifestly the real reason" for the Appellate Court's decision, that court improperly disregarded 12 U.S.C. § 1823 (e) because it would have "shock[ed] the judicial con-

---

[16] We do note, however, that there is no evidence in the record suggesting that the association's board approved the agreement to apply the subordinated debenture to the mortgage note; nor is there evidence, other than perhaps the end result of the payment scheme in its quarterly statements, that the association kept any official record of the arrangement. See 12 U.S.C. § 1823 (e) (C) and (D).

science" to permit OCI to recover in this case. See *OCI Mortgage Corp.* v. *Marchese*, supra, 56 Conn. App. 683. Although the Appellate Court concluded that it would have been inequitable to allow OCI to prevail in a proceeding such as this mortgage foreclosure action; id., 677, 683; we note that there is no catchall equitable exception to the provisions of 12 U.S.C. § 1823 (e). See *Langley* v. *Federal Deposit Ins. Corp.*, supra, 484 U.S. 95 (refusing to "engraft an equitable exception upon the plain terms of the statute"); *Federal Deposit Ins. Corp.* v. *Fisher*, 727 F. Sup. 1306, 1311 (D. Minn. 1989) (refusing to "weigh the equities" in light of Congress' "measured decision" in passing unambiguous language of § 1823 [e]).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of strict foreclosure, and to remand the case to the trial court to set new law days.

In this opinion the other justices concurred.