[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter, which concerns the plaintiffs' claims and the defendants' special defenses and counterclaims, was tried to the court on June 14, 2002. The plaintiff is Digicomm, Inc. (Digicomm), a Connecticut corporation providing copier repair and maintenance services. The defendants are AR Robinson Printing (AR Printing), a company providing printing services to individual and corporate clients, and Alvin Robinson, the owner and sole employee of AR Printing. Both parties filed post-trial briefs, the last of which was filed on June 28, 2002. After considering the evidence and the arguments of the parties, the court issues this decision.
 PROCEDURAL HISTORY
On March, 14, 2001, Digicomm filed a two-count complaint against the defendants.
Count one of the complaint alleges that AR Printing breached a general equipment maintenance agreement by failing to make monthly payments as required under the contract. The second count alleges that Robinson breached a personal guaranty by failing to pay all of AR Printing's contractual obligations. Digicomm seeks money damages, interest, costs, attorney's fees, and any other relief the court deems necessary.
On April 10, 2001, the defendants responded by filing an answer, three special defenses, and three counterclaims. In the first special defense, the defendants allege all monies owed by AR Printing have been paid. In the second special defense, the defendants allege that an accord was reached between Digicomm and Robinson, and that Robinson satisfied the accord by a check, dated May 23, 2000, in the amount of $424.50. The final special defense alleges that Digicomm breached the contract with AR Printing thereby excusing the defendants from further performance.
As explained, the defendants also filed three counterclaims. The first CT Page 14151 counterclaim alleges that Digicomm breached the contract by not providing the copier services required under the contract. The second counterclaim alleges that Digicomm breached the implied covenant of good faith and fair dealing by failing to perform its obligations under the contract. Finally, the third counterclaim alleges that Digicomm violated the Connecticut Unfair Trade Practices Act (CUTPA) by seeking payment for services that it has not provided.
The defendants seek compensatory damages, punitive damages, attorney's fees, and any other relief the court deems necessary.
On May 23, 2001, Digicomm filed a reply to the defendants' special defenses and an answer to the defendants' counterclaims. No special defenses were pleaded in response to the counterclaims.
Digicomm certified that the pleadings were closed on July 20, 2001. The matter was then placed on the assignment of court cases calendar. Nevertheless, on September 25, 2001, the parties did not appear at the call of the calendar and judgment of dismissal was entered (Alander,J.). On October 16, 2001, Digicomm filed a motion to set aside the judgment and the court granted the motion ten days later on October 26, 2001. (Alander, J.). The case then proceeded to trial before this court on June 14, 2002.
 FACTS
The court finds the following facts. On March 30, 1998, Digicomm entered into a General Equipment Maintenance Agreement with AR Printing. (Exhibit 1) Under the terms of the contract, Digicomm agreed to provide copier maintenance and repair services to AR Printing for a five-year term, ending in February, 2003. (Exhibit 1, ¶ 1.) In exchange, AR Printing agreed to pay Digicomm $212.25 per month. (Exhibit 1.) Alvin Robinson, the owner and sole employee of AR Printing, personally guaranteed payment of all sums and performance of all obligations of AR Printing. (Exhibit 1, ¶ 22.)
On October 8, 1999, Robinson made a service call into Digicomm because his copier, a Kodak 90SS, was making inadequate copies. A serviceman from Digicomm, William Figueroa, arrived to inspect the copier on October 12, 1999. Figueroa, however, was unable to remedy the problem.
The parties agreed that because Digicomm was unable to fix the copier, Digicomm would provide AR Printing with a replacement copier while Digicomm attempted to find AR Printing another Kodak 90SS. On November 12, 1999, exactly one month after Figueroa had inspected AR Printing's CT Page 14152 copier, Digicomm installed a Cannon 6050 copier in the office of AR Printing. Robinson did not have any difficulties with the Cannon 6050 and found it to be a superior copier to the Kodak 90SS. On December 17, 1999, however, the plaintiff again entered the office of AR Printing and replaced the Cannon 6050 with a Cannon 8530 copier. The new copier produced inadequate copies. On January 5, 2000, Danzas, a client of AR Printing, terminated its employment of AR Printing because of "poor copier services, incomplete and untimely training manuals, and the printing quality." (Exhibit D.) One day later, on January 6, 2000, AR Printing purchased a new copier at the cost of $13,550. (Exhibit G.) Soon afterwards, on February 16, 2000, the plaintiff, having found a replacement Kodak 90SS for AR Printing, replaced the Canon 8530 with the Kodak 90S5. (Exhibit F.) The new printer, however, also produced inadequate copies.
AR Printing continued to pay Digicomm any sums owing under the contract until January, 2000. In April of 2000, Robinson called Digicomm to put in a service request. Digicomm, through its president, John Skorupinski, refused to provide any services as AR Printing had not paid any invoices since December of 1999. The parties agreed, however, that if AR Printing paid Digicomm $424.50, Digicomm would service the copier. On May 23, 2000, Skorupinski arrived at AR Printing's office to service the copier, and at that time, Robinson presented Digicomm with a $424.50 check. (Exhibit K.) Since then, no payments have been made to Digicomm and no services have been rendered to AR Printing.
 DISCUSSION
I. Breach of Contract and Breach of Guaranty
Digicomm alleges that AR Printing breached the contract and that Robinson breached the guaranty. Specifically, Digicomm argues that AR Printing breached the contract by not promptly paying invoices for December 1999 and January 2000. Furthermore, Digicomm argues that AR Printing breached the contract because it has failed to pay any invoices since May 2000.
Digicomm also alleges that Robinson breached the personal guaranty contained in the contract. Digicomm argues that Robinson breached the guaranty by refusing to pay the debt owed by AR Printing under the contract.
The defendants, however, allege that Digicomm was the one who breached the contract. Specifically, the defendants argue that Digicomm did not fully perform its obligations because it failed to maintain the original CT Page 14153 Kodak 90SS and to provide an adequate replacement copier.
In addition, Robinson alleges he has not breached the guaranty. He argues that Digicomm's breach excused him of any duty to pay.
This court must therefore decide which party, if any, has breached the contract. "In a civil case, the general burden of proof rests upon the plaintiff." (Internal quotation marks omitted.) Somers v. LeVasseur,230 Conn. 560, 568 (1994). "[A] breach of contract claim . . . requires proof by a preponderance of the evidence." Foley v. Huntington Company,42 Conn. App. 712, 746, 682 A.2d 1026, cert. denied, 239 Conn. 931,683 A.2d 397 (1996) citing Waicunas v. Macari, 151 Conn. 134, 137,193 A.2d 709 (1963). Our Supreme Court has stated that the preponderance of the evidence test "means simply that the evidence must, when considered fairly and impartially, induce a reasonable belief that the fact in issue is true." (Internal quotation marks omitted.) State v.Warren, 169 Conn. 207, 213, 363 A.2d 91 (1975). "The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party and (4) damages." (Internal quotation marks omitted.) Alcoa Composites,Inc. v. Bonded Technologies, Inc., Superior Court, judicial district of Middlesex at Middletown, Docket No. 093208 (May 2, 2002, Wolven, J.).
The court finds that the defendants have met their burden. The parties do not dispute the existence of a valid agreement. According to the language of the contract, Digicomm agreed to "[p]erform any machine adjustment and/or replacement of parts necessary to repair equipment," and to "[p]erform any necessary periodic maintenance that is required." (Exhibit 1, ¶ 1.) In exchange, AR Printing agreed to pay Digicomm $212.25 per month. (Exhibit 1.) Additionally, Robinson agreed to guarantee "payment of all sums and performance of all obligations of AR Robinson Printing. . . ." (Exhibit 1, ¶ 22.)
Furthermore, the evidence and testimony demonstrates that AR Printing fully performed its obligation of paying Digicomm $212.25 per month. The plaintiffs do not dispute the fact that AR Printing paid all of its invoices on time through December 1999. In fact, the defendants presented copies of canceled checks from February 1999 through December 1999, which show that AR Printing was paying its invoices in a timely fashion. (Exhibit C.) Furthermore, Robinson made a payment of $424.25 to Digicomm on May 23, 2000. (Exhibit K.) These payments were for invoices covering the months of December 1999 and January 2000.
Although AR Printing has not paid any invoices submitted after February 2000, Digicomm had breached the contract prior to February 2000. Robinson CT Page 14154 testified that he began having trouble with the original Kodak 90SS in early October 1999. In support of this testimony, the defendants presented copies made by Figueroa when inspecting the Kodak 90SS on October 12, 1999. (Exhibit A.) The copies were blurry and faded. (Exhibit A.) Digicomm did not provide AR Printing with a replacement copier until November 12, 1999 — a full month later. Although the replacement copier, a Cannon 6050, produced adequate copies, Digicomm replaced it with a Cannon 8030 on December 17, 1999. According to Robinson, however, the Cannon 8030 produced inadequate copies. Digicomm did not replace the Cannon 8030 until February 16, 2000 — a full two months later. Even when Digicomm did replace the Cannon 8030, the copier needed parts. (Exhibit H.) Moreover, on the day the replacement copier, a Kodak 90SS was installed, Robinson made a notation of the service receipt that the copy quality was inadequate. (Exhibit H.) The court therefore finds that there was a valid agreement, that AR Printing fully performed its obligations, and that Digicomm breached the contract.[1]
The defendants, however, are not yet done. They must still prove damages. The defendants argue that they indeed have suffered damages because they lost profits by virtue of the Training and Service Department of Danzas Intercontinental (Danzas) terminating its business relationship with the defendants. Furthermore, the defendants contend that they suffered damages because they were forced to buy a new copier at a cost of $13,515.00.
"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . It has traditionally been held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. . . . This court has consistently applied the general damage formula of Hadleyv. Baxendale, [9 Ex. 341, 354, 156 Eng. Rep. 145 (1854),] to the recovery of lost profits for breach of contract, and it is our rule that [u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." (Internal quotation marks omitted.)Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 32,662 A.2d 89 (1995). "The usual recovery for breach of a contract is the contract price or the lost profits therefrom." Gazo v. Stamford,255 Conn. 245, 265, 765 A.2d 505 (2001).
The defendants prove that they suffered damages. Robinson testified that AR Printing had been hired by Danzas to produce training manuals for CT Page 14155 its employees. Robinson further testified that because of Digicomm's failure to repair the Kodak 90SS, AR Printing was terminated by Danzas in January 2000. The termination letter, which was presented at trial, stated that Danzas was terminating AR Printing because of "poor copier service, Incompletion of training Manuals on time, and the printing quality." (Exhibit D.) The defendants also presented invoices showing that AR Printing provided Danzas with $17,574.73 in printing services in 1999. (Exhibit E.) Robinson also testified that he expected to receive more work from Danzas in 2000. Finally, Robinson testified that he had to buy a new copier as a result of Digicomm's breach. In support of this testimony, the defendants presented an invoice dated January 6, 2000, which shows that AR Printing paid $13,515 for a Canon 6050 copier. (Exhibit G.) The court therefore finds that the defendants have proven damages.
Despite proving damages, AR Printing cannot recover these amounts. The contract expressly provides: "Such damages, for which Digicomm will not be responsible, include but are not limited to, loss of revenue of profit, downtime costs, loss of use of equipment, cost of any substitute equipment, facilities, or services, or claims of your customers for such damages. This limitation of liability will not apply to claims for Injury to persons or damage to property cause by the sole negligence or default of Digicomm by persons under Its direction or control." (Exhibit 1, ¶ 16.)
"The contract in this case was a preprinted form. Courts have shown a tendency to hold contracts of this type [to be] against public policy when entered into by professional service providers in the course of dealing with the general public. . . . Such provisions have been upheld, however, under appropriate conditions, such as the assent of both parties." (Citation omitted.) Mattegat v. Klopfenstein, 50 Conn. App. 97,103-04, 717 A.2d 276, cert. denied, 247 Conn. 922, 722 A.2d 810 (1998) (limitation of liability provision unenforceable because parties did not mutually assent). In this case, neither party alleges and no evidence has been presented that supports the proposition that the parties did not mutually assent to the provisions contained in the contract.
Furthermore, our Supreme Court has explained: "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) OCI MortgageCorp. v. Marchese, 255 Conn. 448, 466, 774 A.2d 940 (2001). "When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction." (Internal quotation marks omitted.) Levine v. Massey, 232 Conn. 272, 278, 654 A.2d 737
(1995). "It is axiomatic that a party is entitled to rely upon its CT Page 14156 written contract as the final integration of its rights and duties." Id., 279. "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. (Internal quotation marks omitted.)Tallmadge Bros. v. Iroquois Gas Transmission System, 252 Conn. 479, 495,746 A.2d 1277 (2000).
The defendants have not proven that Digicomm is liable for any damages under the contract. The defendants essentially argue that the loss of business from Danzas resulted in lost profits for AR Printing. The defendants also argue that they have paid monies for a new copier. The contract, however, limits Digicomm's liability for these types of damages. Thus, although the defendants proved each element of their breach of contract claim, Digicomm is not liable for any compensatory damages under the contract.
Digicomm also alleges that Robinson breached the personal guaranty that he made to Digicomm. Nevertheless, because AR Printing is not liable to Digicomm for breach of contract, Robinson accordingly is not liable to Digicomm for breach of guaranty. Riverbend Executive Center, Inc. v.Modern Telecom, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 157888 (Jun. 1, 2000, Mintz, J.)
II. Special Defenses
The defendant also raises three special defenses.
Nevertheless, because the court has found that "the plaintiff has failed to sustain [its] burden of proof regarding any of the counts in [its] complaint . . . the court need not consider the special defenses raised by the defendant." Pendarvis v. Harrison, Superior Court, judicial district of New Haven, Docket No. 408681 (March 7, 2001, Pittman, J.).
III. Breach of Implied Covenant of Good Faith and Fair Dealing
The defendants further allege that Digicomm breached its implied covenant of good faith and fair dealing. Specifically, the defendants argue that despite having breached the contract, Digicomm is acting in bad faith by virtue of its seeking extensive payment.
"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. . . . Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair CT Page 14157 dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.
"To prove a claim for bad faith under Connecticut law, the [defendants are] required to prove that the [plaintiff] engaged in conduct design[ed] to mislead or to deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. . . . [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will. . . . Moreover, [b]ad faith is an indefinite term that contemplates a state of mind affirmatively operating with some design or motive of interest or ill will." (Citations omitted; internal quotation marks omitted.) Elm Street Builders, Inc. v. Enterprise Park CondominiumAssn., Inc., 63 Conn. App. 657, 667-68,778 A.2d 237 (2001).
The defendants have not met their burden. The defendants have not provided any evidence to demonstrate that Digicomm consciously or purposely chose to evade its contractual obligations. In fact, this court finds that Digicomm honestly believed that it fulfilled its contractual obligations as it initiated this litigation by filing a breach of contract claim against the defendants. The court therefore finds that the defendants have not proven that Digicomm breached its duty of good faith and fair dealing.
IV. Connecticut Unfair Trade Practices Act
The defendants next allege that Digicomm has violated CUTPA. Specifically, the defendants contend that the act of Digicomm seeking extensive payments despite having breached the contract constitutes an unfair and deceptive trade practice under General Statutes § 42-110b, et seq.[2]
"[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or CT Page 14158 otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of [a violation of CUTPA]." (Internal quotation marks omitted.) Macomber v. Travelers Property Casualty Corp.,261 Conn. 620, 644, ___ A.2d ___ (2002) quoting Hartford Electric SupplyCo. v. Allen-Bradley Co., 250 Conn. 334, 367-68, 736 A.2d 824 (1999).
"A majority of Superior Court cases support the claim that [a] simple breach or contract, even if intentional, does not amount to a violation of [CUTPA]; a [claimant] must show substantial aggravating circumstances to recover under the Act." (Internal quotation marks omitted.) Petro v.K-mart Corporation, Superior Court, judicial district of Waterbury, Docket No. 123768 (Oct. 6, 1997, Pellegrino, J.) citing Emlee EquipmentLeasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575, 580,595 A.2d 951; see also Bonnell v. United Parcel Service, Superior Court, judicial district of Danbury, Docket No. 315927 (February 7, 1997Grogins, J.) (18 Conn.L.Rptr. 646); The Production Equipment Co. v.Blakeslee Arpaia Chapman, Inc., Superior Court, judicial district of New Haven at Meriden, Docket No. 247485 (January 3, 1996, Silbert, J.) (15 Conn.L.Rptr. 558); LoMonte v. Rice, Superior Court, judicial district of Hartford at New Britain, Docket No. 441735 (January 30, 1991, Aronson,J.) (3 Conn.L.Rptr. 189); Central Delivery Service of Washington, Inc.v. People's Bank, Superior Court, judicial district of Hartford at New Britain, Docket No. 438015 (October 1, 1990, Goldberg, S.J.) (2 Conn.L.Rptr. 449); Jarasek v. Chrysler House Associates LimitedPartnership, Superior Court, judicial district of Hartford, Docket No. 338598 (December 2, 1988, O'Connor, J.) (4 CSCR 73). The court finds this line of cases persuasive.
In order for the defendants to prevail, therefore, they would have to show a substantial aggravating circumstance. The defendants have failed to make such a showing. The defendants simply argue that Digicomm violated CUTPA because it filed a breach of contract claim in an action in which the court finds that Digicomm had actually breached the contract first. If the court were to adopt such an interpretation, one party would be in violation of CUTPA whenever two parties disagree over who breached a contract first. Such an interpretation is untenable. The court, therefore, finds that the defendants have not presented sufficient evidence to support a finding that Digicomm violated CUTPA.
V. Punitive Damages
CT Page 14159
AR Printing also seeks punitive damages under the common law and General Statutes § 42-110b. The defendants, however, met their burden only with respect to their common law breach of contract claim. Thus the court need only decide whether the defendants are entitled to punitive damages for Digicomm's breach of contract. "Punitive damages are not ordinarily recoverable for breach of contract. . . . This is so because . . . punitive or exemplary damages are assessed by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contract relationship. The few classes of cases in which such damages have been allowed contain elements which bring them within the field of tort." (Citation omitted.) Triangle Sheet Metal Works, Inc.v. Silver, 154 Conn. 116, 127, 222 A.2d 220 (1966). "The flavor of the basic requirement to justify an award of punitive or exemplary damages has been repeatedly described in terms of wanton and malicious injury, evil motive and violence. . . . The Restatement declares that punitive damages may be awarded only for `outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.' Restatement, 4 Torts § 908, comment (b)." Id., 128; see also L.F. Pace Sons, Inc. v. Travelers Indemnity Co.,9 Conn. App. 30, 47-48, 514 A.2d 766, cert. denied, 201 Conn. 811,516 A.2d 886 (1986).
The defendants have not proven that punitive damages are proper in this case. No evidence has been presented and no testimony given which would bring this case into the field of tort. Furthermore, there has been no evidence presented that demonstrates Digicomm acted with an evil motive. In fact, the evidence and testimony demonstrate that Digicomm, although unable to do so, made a good faith effort to fulfill its contractual obligations as it provided AR Printing with three replacement copiers. The court, therefore, finds that an award of punitive damages is not appropriate.
VII. Attorney's Fees
The defendants also ask the court to grant them attorney's fees. "The general rule of law known as the `American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Citations omitted; internal quotation marks omitted.) Rizzo Pool Co. v.Del Grosso, 240 Conn. 58, 72-73, 689 A.2d 1097 (1997). The only claim that the defendants have been successful in proving is their breach of CT Page 14160 contract claim. Neither the contract, nor guaranty provision contained therein, provides for the payment of attorney's fees to AR Printing or Robinson. Accordingly, this court will not award attorney's fees to the defendants.
 CONCLUSION
For the foregoing reasons, judgment may enter for the defendants on the first and second counts of the complaint. Furthermore, judgment may enter in favor of the defendants on count one of the counterclaim. Although the court finds in favor of the defendants, the court further finds that Digicomm is not liable for any damages caused by its breach. Finally, judgment may enter in favor of Digicomm on the second and third counts of the counterclaim.
 ___________________, J. CUTSUMPAS