RESOLUTION TRUST CORPORATION, Appellee,

v.

J.B. CENTRON DEVELOPMENT COMPANY, INC., Appellant.

[Cite as *Resolution Trust Corp. v. J.B. Centron Dev. Co.* (1993), 92 Ohio App.3d 643.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–306.

Decided Sept. 17, 1993.

644

*David C. Tryon* and *Joyce Metti Papandreas,* for appellee.

*John J. McHugh III* and *Myrna A. Shuster,* for appellant.

HANDWORK, Judge.

This is an appeal from the August 5, 1992 judgment of the Lucas County Court of Common Pleas which denied appellant's motions for relief from judgment, stay of execution, and leave to file an amended answer. Appellant asserts the following assignment of error:

"The trial court erred prejudicially in denying defendant's Rule 60(B) motion to vacate a cognovit judgment, upon its finding that the moving defendant was barred from proving its defense, a subsequently negotiated and approved loan workout agreement, by application of 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine [*D'Oench, Duhme & Co., Inc. v. Fed. Deposit Ins. Corp.* (1942), 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956]."

The following facts and procedure are pertinent to this appeal. On August 3, 1988, appellant, J.B. Centron Development Company ("Centron"), entered into a loan agreement with First Federal Savings ("FFS"). William L. Edmonds and Lynn B. Edmonds, general partners of Centron, executed a warranty of attorney and a promissory note, in the amount of $220,000, which was secured by a mortgage and matured on August 1, 1989. This note, along with some other loans, became delinquent by June 1989.

On June 28, 1989, William Edmonds and Larry J. Kosakowski, FFS Vice-President in charge of construction lending, entered into a private workout agreement. In spite of this agreement, the delinquencies continued and, in November 1989, FFS demanded that Centron pay all past due payments of principal and interest. Again, in May 1990, unable to meet these demands, William and Lynn Edmonds entered into a second workout agreement, which was initially approved by both the Edmonds and FFS.

FFS, before the agreement was formally written and executed, changed management and, consequently, also changed the terms of the Centron workout agreement. Mr. Edmonds refused to agree to the terms of the new agreement, which differed substantially from the original workout plan.

On July 24, 1990, FFS filed for and received a cognovit judgment on the loan to Centron. Although Mr. Edmonds attempted to continue negotiations for a workout agreement, FFS, in April 1991, took steps to execute on the cognovit judgment. Centron filed a Civ.R. 60(B) motion for relief from judgment on July 19, 1991. At that point, Resolution Trust Corporation ("RTC") was appointed as receiver of FFS.

The Lucas County Court of Common Pleas, in ruling on Centron's 60(B) motion, noted that, but for the appointment of RTC as receiver, Centron's motion would have been granted. The court went on to note, with great dissatisfaction,

that under Section 1823(e), Title 12, U.S.Code, Centron's normally meritorious defense was no longer valid. The court entered judgment denying Centron's motion for relief from judgment, from which appellant Centron appeals.

Appellant argues that, under Ohio law, it would have a valid defense to appellee's cognovit judgment. Appellant further claims that this defense is an exception to Section 1823(e), Title 12, U.S.Code, which otherwise negates any defenses regarding certain side agreements between borrowers and banks. For the reasons stated below, we find that federal law applies in this case and, therefore, preempts the defense asserted by appellant.

■■■ Cognovit judgments may be vacated pursuant to Civ.R. 60(B). *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 101, 68 O.O.2d 251, 253, 316 N.E.2d 469, 474. In a Civ.R. 60(B) motion for relief from judgment, the moving party must show that he (1) can present a meritorious claim or defense, (2) can establish one of the grounds listed in Civ.R. 60(B), and (3) has timely filed the motion. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 150–151, 1 O.O.3d 86, 88, 351 N.E.2d 113, 115–116. Where a movant has established the three criteria noted above, overruling a Civ.R. 60(B) motion would be an abuse of discretion by the trial court. *Adomeit, supra,* 39 Ohio App.2d at 104, 68 O.O.2d at 255, 316 N.E.2d at 475. However, relief need not be granted when the movant has not established the three requirements. *GTE, supra,* 47 Ohio St.2d at 151, 1 O.O.3d at 88, 351 N.E.2d at 116.

In the present case, the trial court specifically found that appellant had shown grounds under Civ.R. 60(B)(5) and that the motion was timely filed, establishing the second and third criteria noted above. Although appellee argues that, in this case, the motion was not timely filed, sufficient facts were presented to support the trial court's decision. Finding no abuse of discretion, we decline to disturb the trial court's ruling on these two criteria. We shall now address the remaining issue of whether appellant established a meritorious defense to the judgment.

Normally, under Ohio law, an oral modification of a contract may be a defense to a cognovit judgment and, thus, satisfy the "meritorious defense" criteria for Civ.R. 60(B). However, where federal law provides the rule of decision regarding certain issues, it overrides state law. *Fed. S. & L. Ins. Corp. v. Griffin* (C.A.5, 1991), 935 F.2d 691, 698.

■■■ When the Federal Deposit Insurance Corporation ("FDIC"), or another bank, is appointed as an agent of the government as receiver in the restructuring or liquidation of an insolvent bank, federal law applies. *Gaff v. Fed. Deposit Ins. Corp.* (C.A.6, 1990), 919 F.2d 384, 388; *Timberland Design, Inc. v. First Serv. Bank for Sav.* (C.A.1, 1991), 932 F.2d 46. When acting as a receiver, the FDIC must be able to rely on the written records of the bank being restructured.

*Langley v. Fed. Deposit Ins. Corp.* (1987), 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340, 346; *Fed. Deposit Ins. Co. v. Aetna Cas. & Sur. Co.* (C.A.6, 1991), 947 F.2d 196, 201.

█ In this case, RTC, appointed as receiver of the failing FFS, became an agent of the government. This event activated imposition of federal law where applicable.

To prevent fraud or other misleading actions by borrowers and bank officials, Congress has codified what is known as the *D'Oench, Duhme* doctrine in Section 1823(e), Title 12, U.S.Code ("Section 1823[e]"), which states:

"(e) Agreements against interests of Corporation

"No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

"(1) is in writing,

"(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

"(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

"(4) has been, continuously, from the time of its execution, an official record of the depository institution."

Section 1823(e) applies to " 'assertions of unwritten arrangements allegedly breached by the bank rendering the debt voidable * * *.' " *Twin Constr. Co. v. Boca Raton, Inc.* (C.A.11, 1991), 925 F.2d 378, 382. Neither the intent to deceive nor fraud is necessary for the statute to apply. *Id.* Even if the parties are not guilty of misconduct, the FDIC has been able to avoid the terms of an agreement not properly recorded in the bank's records. *Howell v. Continental Credit Corp.* (C.A.7, 1981), 655 F.2d 743, 747.

█ If an agreement is bilateral, rather than unilateral, Section 1823(e) may not apply. See *Aetna, supra,* at 206; *Howell, supra,* at 746–747. Promissory notes, however, are unilateral contracts. *Aetna, supra,* at 207. In the present case, the trial court specifically found that the workout plan was based on the

original promissory note, establishing a unilateral agreement. We agree with the court's determination and thus, federal law and Section 1823(e) apply.

■ An agreement may be a valid defense to actions by the FDIC as a receiver or corporation, only if that agreement meets all four requirements of Section 1823(e). *Langley, supra,* 484 U.S. at 91, 108 S.Ct. at 401, 98 L.Ed.2d at 347. We find that appellant's asserted agreement does not meet the requirements of Section 1823(e).

■ The first requirement, that the agreement be in writing, is satisfied if the documents contain all the essential elements of the agreement. *Langley, supra,* at 91, 108 S.Ct. at 401, 98 L.Ed.2d at 347. An application for a banker's blanket bond has been held to evidence the essential elements of an agreement. *Aetna, supra,* at 202. An unsigned memorandum from a bank president, outlining the terms of a loan, eventually accepted by the borrowers, has been held not to serve to establish an agreement contrary to subsequent written documents. *Fed. Deposit Ins. Corp. v. Virginia Crossings Partnership* (C.A.8, 1990), 909 F.2d 306, 310. Evidence of an unexecuted "agreement" found on the bank's books, along with documents reflecting loan committee approval of the agreement, has also been held not to meet the statutory requirement for a "writing." *Franklin Asaph Ltd. Partnership v. Fed. Deposit Ins. Corp.* (D.D.C.1992), 794 F.Supp. 402. Where no single document exists that states the terms of the agreement, mere reference in the bank records does not satisfy the writing requirement. *Beighley v. Fed. Deposit Ins. Corp.* (C.A.5, 1989), 868 F.2d 776, 783.

■ Appellant argues that the terms of the proposed loan, as outlined and approved by the Senior Loan Committee and Board Loan Committee, constitute a writing under Section 1823(e). The record shows that a formalized contract for the workout agreement had been in the process of being drafted, but was never completed. Negotiations continued, but no final terms were ever agreed upon. Therefore, the exact details of the terms of the original agreement were never finalized. FFS then chose to change the terms of the agreement prior to the appointment of RTC as a receiver. The appellate record provides no evidence that a completed, formal document including all of the essential terms of the agreement ever existed.

Appellant suggests that the minutes of the Senior Loan and Board Loan Committees established the terms of the workout plan. However, once the FFS changed the terms and Mr. Edmonds rejected the new proposals, the initial loan terms were no longer valid. No writing exists that encompasses any final

agreement. Therefore, appellant has not established that his agreement is a writing under Section 1823(e).

■■■ The second requirement of Section 1823(e) is that the agreement "was executed by the depository institution and any person claiming an adverse interest thereunder * * * contemporaneously with the acquisition of the asset." "Executed" has been interpreted to have two possible meanings. *Twin Constr. Co. v. Boca Raton, Inc., supra,* at 384. One interpretation is that both sides have fully performed any obligations contained in the agreement; the other is that both sides have signed the agreement. *Id.* "[A] piece of paper that merely recites obligations of more than one party is insufficient to prevent [the] * * * use of *D'Oench* and section 1823(e)." *Id.*

In the present case, neither FFS nor the Edmonds performed any obligation of the proposed workout agreement, eliminating the first interpretation. Likewise, as to the second interpretation, neither party ever signed any type of document in reference to the workout agreement. FFS's unilateral changes of the terms are not relevant, since no signed agreement existed in the bank's books and records.

Appellant again urges us to accept, as evidence of an executed agreement, the minutes reflecting the initial approval by the Senior Loan Committee. Even if we assume that the approval by the Board Loan Committee was valid and not merely a recitation of the Senior Loan Committee's recommendations, the records still do not reflect a document signed by any parties. The "agreement" never became a binding contract on either FFS or the Edmonds, since it was never drafted or executed. This rule also protects the appellant from claims by RTC that the later proposals, rejected by the Edmonds, reflected the final agreement.

Additionally, Section 1823(e)(2) requires that the execution be contemporaneous with the acquiring of the asset. In a workout agreement, the terms of repayment are simply restructured. Unless new assets are added as security, the original asset acquired by the bank at the earlier execution of loan documents, notes and mortgages, remains the same. Therefore, appellant's agreement does not meet the contemporaneous exchange requirement of Section 1823(e).

■■■ The last two requirements are that the agreement must be approved by the board of directors of the depository institution, as reflected in minutes of the board or committee, and has been continuously, *from the time of its execution,* an official record of the depository institution. The plain language of the statute refers to an agreement which has been established as a writing, executed contemporaneously with the acquisition of the asset.

In the present case, although the workout loan agreement was initially approved by the Senior Loan Committee, a final agreement was not. Further, since the terms of the loan were never reduced to a formal executed document, the parties never became bound by any contract. If no binding contract ever existed, it could not possibly become an official record of the bank from the time of its execution. Accordingly, the workout loan agreement fails the third and fourth requirements of Section 1823(e).

 The United States Supreme Court and other federal courts have refused to find any equitable exceptions within the plain language of Section 1823(e). *Langley, supra,* 484 U.S. at 94, 108 S.Ct. at 402, 98 L.Ed.2d at 349; *Virginia Crossings, supra,* at 310; *Fed. Deposit Ins. Corp. v. Cardinal Well Serv. Co.* (C.A.5, 1988), 837 F.2d 1369, 1372. The four requirements are "certain and categorical." *Beighley, supra,* at 782. Although the actions of FFS in reneging on its initial approval of appellant's workout plan appear inequitable, the operation and application of Section 1823 afford no exception where the agreement does not meet the four requirements thereunder.

Accordingly, since appellant could not establish a valid defense against the FDIC, the appellant has not established a meritorious defense for a Civ.R. 60(B) motion, as federal law preempts and removes this issue from the realms of state rules of civil procedure. Therefore, the trial court did not abuse its discretion and properly denied appellant's motion to set aside the cognovit judgment and accompanying motions. Appellant's assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is hereby affirmed with court costs assessed to appellant.

*Judgment affirmed.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.