OPINION
{¶ 1} Defendants-appellants, Michael Hiener ("Hiener") and Diane Hiener (jointly, "the Hieners"), appeal the July 15, 2003 judgment entry of the Lake County Court of Common Pleas denying the Hieners' Motion for Relief from Judgment, Motion for Leave to File Reply, and Motion to Reconsider, and the July 17, 2003 judgment entry of the same court ordering the Hieners' to pay $305 for failing to produce the required documents at a debtor's examination. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On January 18, 1997, plaintiff-appellee Joanne B. Bates ("Bates") entered into a stock purchase agreement with the Hieners, Midland Title of Ashtabula County, Inc. ("Midland Title"), Bates Title Corporation ("Bates Title"), George A. Vince, Jr. ("Vince"), and Helen Vince (jointly, "the Vinces"). At that time, Bates owned 300 shares of Midland Title common stock and 300 shares of Bates Title common stock. Pursuant to the terms of the stock purchase agreement, Hiener and Vince agreed to purchase sixteen shares of the Midland Title stock and sixteen shares of the Bates Title stock from Bates for $70,000. The remainder of Bates' stock was redeemed by Midland Title and Bates Title for $855,000. As the initial payment, Midland Title was to deliver, prior to closing, an amount equivalent to Midland Title's and Bates Title's combined cash on hand, cash on deposit and cash equivalents minus $100,000. Thereupon, Midland Title and Bates Title would execute a cognovit promissory note for the balance of the purchase price.
 {¶ 3} On January 31, 1997, Midland Title, through Hiener in his capacity as company president, and Bates Title, through Vince in his capacity as company president, executed a cognovit promissory note, payable to Bates, in the amount of $583,010.26 plus interest at the rate of 9¾ percent per annum. In a "guarantee and endorsement" provision appended to the note, the Hieners and the Vinces agreed "[t]o pay said Promissory Note whenever the unpaid principal and/or accrued interest becomes due and payable." The "guarantee and endorsement" provision further provided that "the holder of this Promissory Note may proceed against [the Hieners and the Vinces] jointly and severally without first exhausting the holder's remedies against Debtors or any other persons or entities."
 {¶ 4} Also on January 31, 1997, Midland Title and Bates Title signed a "security agreement," whereby they granted Bates a security interest in the property, both tangible and intangible, of the two companies to secure the payment of the promissory note. Vince and Hiener signed a "pledge and security agreement," whereby they pledged their stock in Midland Title and Bates Title to Bates as security "for the payment of monies and the performance of obligations" as provided in the purchase agreement and the promissory note. In the event of default under any of these agreements, Bates would have the power and authority "to sell, assign and deliver all or any part of the Pledged Stock" and would be appointed "irrevocable and exclusive proxy and attorneyin-fact * * * to vote the Pledged Stock at [shareholder] meetings * * * in such manner as the Proxy determines (in its sole and absolute discretion)."
 {¶ 5} On June 1, 2002, the Hieners, the Vinces, Midland Title, and Bates Title defaulted on the promissory note when they failed to make final payment of the principal sum of $377,564.21 with accrued interest of $29,608.65.
 {¶ 6} Bates did not immediately seek judgment on the promissory note. Bates orally agreed to forebear, for a time, from enforcing the promissory note while Hiener and Vince sought buyers for the companies. In November 2002, there was some attempt to reach a formal agreement regarding the enforcement of the promissory note. No agreement, however, was ever reached.
 {¶ 7} On March 3, 2003, Midland Title Security ("Midland Security"), which, pursuant to an agency agreement, provided title insurance services to Midland Title and Bates Title, terminated its agency agreement for the delinquent "remittance of premiums." With the termination of the agency agreement with Midland Security, Midland Title and Bates Title were no longer able to conduct business. Thereupon, Bates exercised her rights under the "pledge and security agreement" by voting the pledged Midland Title and Bates Title stock to reconstitute the board of directors for and assume control of these companies.
 {¶ 8} On March 14, 2003, Bates filed her complaint in the Lake County Court of Common Pleas seeking judgment on the promissory note. The same day, the court entered judgment by confession in Bates' favor. On May 30, 2003, the Hieners filed a Civil Rule 60(B) motion for relief from judgment and stay of further proceedings. On July 15, 2003, the trial court denied both motions. The following day, the Hieners appeared for a debtor's examination before the court but failed to bring certain documents as required by court order.[1] Thereupon, the court rescheduled the examination and ordered the Hieners to pay Bates' counsel $55.00 for the cost of hiring a court reporter and $250.00 for two hours of time spent to attend the examination. All proceedings in respect to the Hieners have been stayed pending appeal.
 {¶ 9} The Hieners raise five assignments of error for our consideration:
 {¶ 10} "[1.] Did Appellants comply with Civ.R. 60(B) such that their motion for relief should have been granted?
 {¶ 11} "[2.] The Trial Court erred by not holding a hearing upon Plaintiff's motion for relief from judgment Pursuant to Civil Rule 60(B).
 {¶ 12} "[3.] The Trial Court erred in not granting Appellants leave to respond to Appellee's response to Appellants' motion for relief from judgment.
 {¶ 13} "[4.] The Trial Court erred in ordering Appellants to produce documents as part of a debtor's exam pursuant to R.C.2333.09.
 {¶ 14} "[5.] The Trial Court erred in ordering Appellants to pay $3[05].00 to Appellee's counsel."
 {¶ 15} Pursuant to Ohio Civil Rule 60(B) governing relief from judgments and orders, cognovit judgments may be vacated.Adomeit v. Baltimore (1974), 39 Ohio App.2d 97, paragraph one of the syllabus. Since a cognovit note entitles the creditor to obtain a judgment against the debtor without hearing or notice, there is a lesser burden on the movant seeking relief from a cognovit judgment. Natl. City Bank v. Concorde Controls, Inc.,
11th Dist. No. 2001-L-113, 2002-Ohio-6578, at ¶ 17; Badalamentiv. Natl. City Bank, 11th Dist. No. 2001-P-0122, 2002-Ohio-4815, at ¶¶ 14-16 (citations omitted). The movant must establish: (1) the existence of a meritorious defense (not that he will ultimately prevail), and (2) that the motion is timely made.Bank One, NA v. SKRL Tool Die, Inc., 11th Dist. No. 2003-L-048, 2004-Ohio-2602, at ¶ 14 (citations omitted); Natl.City, 2002-Ohio-6578, at ¶ 17 (citation omitted); Badalamenti,
2002-Ohio-4815, at ¶ 17 (citation omitted).
 {¶ 16} Civil Rule 60(B) does not require the movant to submit evidentiary materials in support of his motion. Rose Chevrolet,Inc. v. Adams (1988), 36 Ohio St.3d 17, 20-21. The burden is upon the movant, however, "to enlighten the court as to why relief should be granted" and "to demonstrate that the interests of justice demand the setting aside of a judgment normally accorded finality." Id. at 21.
 {¶ 17} The decision to grant or deny a Civ.R. 60(B) motion is entrusted to the sound discretion of the trial court. In reWhitman, 81 Ohio St.3d 239, 242, 1998-Ohio-466, citing Griffeyv. Rajan (1987), 33 Ohio St.3d 75, 77. A trial court abuses its discretion when, despite the existence of a meritorious defense, it denies a motion for relief from judgment entered without prior notice upon confession pursuant to a warrant of attorney.Lewandowski v. Donohue Intelligraphics, Inc. (1994),93 Ohio App.3d 430, 433, citing Myers v. McGuire (1992),80 Ohio App.3d 644, 647; Bank One, 2004-Ohio-2602, at ¶¶ 14-16 (citations omitted).
 {¶ 18} Under the first assignment of error, the Hieners argue that the trial court erred by denying their motion for relief from judgment. The Hieners assert that they raised three meritorious defenses entitling them to relief. The first meritorious defense alleged by the Hieners is that Bates orally agreed to modify their agreement so that Bates would not seek enforcement of the note until a buyer was found for Midland Title and Bates Title.
 {¶ 19} "Generally, a cognovit note is subject to the general rule that written contracts may be modified by oral agreement, and modification is a meritorious defense to a claim on a cognovit note." Your Financial Community of Ohio, Inc. v.Emerick (1997), 123 Ohio App.3d 601, 606, citing ResolutionTrust Corp. v. J.B. Centron Dev. Co. (1993), 92 Ohio App.3d 643,647.
 {¶ 20} In order to constitute a valid modification of the cognovit note, however, Bates' alleged promise to forebear must be supported by new and valuable consideration. Andrews v.Campbell (1881), 36 Ohio St. 361, 369. This Court has described valid consideration as follows: "Consideration is a benefit to party promising, or a loss or detriment to party whom promise is made, and benefit means that promisor, in return for his promise, has acquired a legal right to which he had not been previously entitled, and detriment means that promisee in return for his promise forbears from exercising some legal right he is previously entitled to exercise." Yardmaster, Inc. v. Orris
(June 29, 1984), 11th Dist. No. 9-305, 1984 Ohio App. LEXIS 10194, at *6 (citation omitted).
 {¶ 21} In this case, there is no discernible consideration to support Bates' alleged promise to forebear from enforcement. Locating a buyer for the companies was merely a way in which the Hieners might have avoided defaulting on the note. Their duty to repay the note is exactly the same as it was under the original note. Therefore, locating a buyer does not constitute a new and valuable consideration. Rhoades v. Rhoades (1974),40 Ohio App.2d 559, 562 ("It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party."); cf. First Natl. Bank of Ohiov. Cassell (March 29, 1995), 9th Dist. No. 16823, 1995 Ohio App. LEXIS 1258, at *4-*7 (modification of the terms of a lease which is consistent with the original terms of the lease is not supported by new consideration).
 {¶ 22} Any benefit Bates might have obtained from the Hieners finding a buyer for the companies would have been an incidental benefit and would not constitute valid consideration for the promise to forebear. As Bates was already enitled to payment under the original note, Bates did not acquire a legal right to which she had not been previously entitled. Therefore, there is no benefit to Bates.
 {¶ 23} Without consideration to support the alleged modification to the cognovit note, the Hieners' argument that Bates promised to forebear from enforcement does not constitute operative facts warranting them to relief from judgment.
 {¶ 24} The second alleged meritorious defense raised by the Hieners is that Bates failed to mitigate her damages. Since the duty to mitigate damages is not a recognized defense to a cognovit judgment, this argument, too, fails to assert operative facts warranting the Hieners to relief from judgment.
 {¶ 25} It is well-established law in Ohio that, "[b]y definition, a cognovit provision in a promissory note cuts off every defense, except payment, which the maker of the note may have against enforcement of the note." Tinnes v. Immobilaire IV,Ltd. (Feb. 13, 2001), 10th Dist. No. 00AP-87, 2001 Ohio App. LEXIS 505, at *15 (citation omitted); accord Advanced ClinicalManagement, Inc. v. Salem Chiropractic Center, Inc., 5th Dist. No. 2003CA00108, 2004-Ohio-120, ¶ 18 (citation omitted); FirstNational Bank of Pandora v. Freed, 3rd Dist. No. 5-03-36, 2004-Ohio-3554, ¶ 9; Shore West Construction Co. v. Sroka (Dec. 21, 1989) 8th Dist. No. 57841, 1989 Ohio App. LEXIS 5001, at *2. Therefore, the holder of a cognovit note is not required to mitigate damages caused by the debtor's default.
 {¶ 26} The Hieners' third alleged meritorious defense is that Bates breached her fiduciary duty to Midland Title and Bates Title and, by so doing, impaired the value of the collateral, i.e. the value of the companies, securing the note. Specifically, the Hieners argue that Bates, by assuming control of the companies, caused Midland Security to rescind its agency agreement with Midland Title and Bates Title, thus rendering the companies unable to conduct business.
 {¶ 27} The defense of impairment of the collateral is a recognized meritorious defense to a cognovit judgment. StarBank, N.A. v. Jackson (Dec. 1, 2000), 1st Dist. No. C-000242, 2000 Ohio App. LEXIS 5567, at *10, citing Fed. Land Bank ofLouisville v. Taggart (1987), 31 Ohio St.3d 8, 10-12; BuckeyeFed. Sav. Loan Assn. v. Guirlinger (June 26, 1990), 10th Dist. No. 89AP-1322, 1990 Ohio App. LEXIS 2630, at *7-*8, rev'd on other grounds, 62 Ohio St.3d 312 (1991).
 {¶ 28} The defense is waivable, however, under the Ohio Revised Code, "if the party asserting [impairment] consents to the event or conduct that is the basis of the [impairment] or if the instrument or a separate agreement of the party provides for wavier * * * either specifically or by general language indicating that parties waive defenses based on * * * impairment of collateral." R.C. 1303.70(I). See, also, TransOhio Sav. Bankv. Millston Apartments of Aberdeen, Ltd. (Nov. 6, 1990), 10th Dist. No. 90AP-166, 1990 Ohio App. LEXIS 4909, at *8 ("Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting parties' right to claim his own discharge.") (citation omitted);First Natl. Bank in Massillon v. Bensue Corp. (Dec. 16, 1985), 5th Dist. No. CA-6652, 1985 Ohio App. LEXIS 9703, at *5 (citation omitted).
 {¶ 29} In the present case, the "pledge and security agreement" entered into by the Hieners expressly authorizes Bates to take the actions which the Hieners now claim impaired the value of the collateral. This agreement provided that, in the event of default, Bates would be constituted "an irrevocable and exclusive proxy" for the Hieners and that "[a]ll actions that the Proxy may take or cause to be done * * * are fully ratified, approved and confirmed." The agreement further authorized Bates, in the event of default, to vote the Hieners' stock at shareholder meetings "in such manner as the Proxy determines (in its sole and absolute discretion)." Finally, the agreement recognized and agreed that Bates' "proxy [was] coupled with an interest [in the collateral] as long as any default under the Obligations continues." These provisions clearly establish that the Hieners have waived any right to challenge payment under the note on the grounds of Bates' actions as proxy for the pledged stock. Taggart, 31 Ohio St.3d at 13; TransOhio,
1990 Ohio App. LEXIS 4909, at *9.
 {¶ 30} The Hieners have failed to allege a meritorious defense to the cognovit judgment entered by the court below. The first assignment of error is without merit.
 {¶ 31} In their second assignment of error, the Hieners argue that the trial court erred by failing to hold an evidentiary hearing on their motion for relief from judgment.
 {¶ 32} A movant is entitled to a hearing on a motion for relief from judgment if "the motion and affidavits contain allegations of operative facts which would warrant relief under the rule." Sykes Const. Co., Inc. v. Maple Wood Care Inc. (May 3, 1991), 11th Dist. No. 90-P-2218, 1991 Ohio App. LEXIS 1995, at *2 (citation omitted); Coulson v. Coulson (1983),5 Ohio St.3d 12, 16 (citation omitted). "A trial court does not abuse its discretion by failing to conduct an evidentiary hearing on a Civ.R. 60(B) motion when the court has sufficient evidence before it to decide whether a meritorious defense was presented." Natl.City, 2002-Ohio-6578, at ¶ 19, citing Doddridge v. Fitzpatrick
(1978), 53 Ohio St.2d 9, 14; Huntington Natl. Bank v. Martin
(March 12, 1999), 11th Dist. No. 98-L-082, 1999 Ohio App. LEXIS 936, at *9 (citations omitted).
 {¶ 33} As demonstrated under the first assignment of error, even accepting the allegations set forth in the Hieners' motion and affidavits as true, the Hieners have failed to establish operative facts entitling them to relief. The Hieners' second assignment of error is without merit.
 {¶ 34} In the third assignment of error, the Hieners argue the trial court erred by denying them leave to file a reply to Bates' memorandum in opposition to the motion for relief from judgment. The Ohio Civil Rules do not provide for a reply brief in this situation. The Lake County Court of Common Pleas, Local Rule III(D)(4) provides that reply briefs "may be served and filed within five (5) days after the filing of a Brief in Opposition." Therefore, it was within the trial court's discretion whether to grant the Hieners leave to file a reply brief.
 {¶ 35} In the present case, Bates filed her memorandum in opposition to the Hieners' motion for relief from judgment on June 20, 2003. The Hieners filed their motion for leave to reply on July 14, 2003 — twenty-one days after a reply could have been filed under the local rules. The Hieners alleged that they needed additional time to obtain affidavits in support of their claim that Bates had breached her fiduciary duty and impaired the value of the collateral. As discussed under the first assignment of error, the Hieners have waived the defense of impairment of the collateral pursuant to the terms of the "pledge and security agreement." The proffer of additional evidence in support of this argument would have no bearing on whether a meritorious defense exists to the cognovit judgment.
 {¶ 36} Since the Hieners failed to file a reply or leave to file a reply within the time prescribed by the local rules, and since the proffer of additional evidence would not be outcome determinative, the trial court did not abuse its discretion by denying the Hieners' leave to file a reply. The third assignment of error is without merit.
 {¶ 37} In their fourth assignment of error, the Hieners argue that the trial court erred by ordering them to produce documents as part of the debtor's examination when Bates did not comply with the procedure for compelling the production of documents set forth in the Civil Rules.
 {¶ 38} Civil Rule 69 provides that, in aid of judgment or execution, "the judgment creditor * * * may * * * obtain discovery from any person, including the judgment debtor, in the manner provided in these rules." This rule "permits judgment creditors to obtain discovery in aid of execution." State exrel. Klein v. Chorpening (1983), 6 Ohio St.3d 3, 4. The Ohio Civil Rules provide for the discovery documents relevant to the matter at hand. Civ.R. 34(A) and 26(B). The party requesting the production of documents must serve the other party with a written request setting forth the items to be produced and specifying a reasonable time, place, and manner for their inspection. Civ.R. 34(B).
 {¶ 39} Revised Code 2333.09 provides that "[a] judgment creditor shall be entitled to an order for the examination of a judgment debtor concerning his property, income, or other means of satisfying the judgment * * *." The appropriate court shall issue an order "requiring such debtor to appear and answer concerning his property * * * at a time and place * * * specified in the order." Id.; R.C. 2333.10.
 {¶ 40} In the present case, on May 8, 2003, Bates filed motions in aid of execution requesting orders, pursuant to R.C.2333.09, that the Hieners appear before the court to answer concerning their property and that they bring the financial information requested in the motions. Bates' motions requested that the court determine the time and place at which the Hieners were to answer concerning their property. The same day, the trial court issued orders as requested specifying a time and place. Bates then caused the Hieners to be served, by certified mail, with copies of the motions, the orders, and notices to appear. Service was completed on May 13, 2003.
 {¶ 41} The statutes pertaining to attachment and execution are remedial in nature and, therefore, to be construed liberally for the benefit of the judgment creditor. Weirick v. MansfieldLumber Co. (1917), 96 Ohio St. 386, at 395; Hart v. Andrews
(1921), 103 Ohio St. 218, paragraph two of the syllabus; StateNatl. Bank v. Fryman (1971), 27 Ohio Misc. 12, 13 (citations omitted). In doing so, the rules may be "so applied as to extend the statute beyond its actual language to cases within its reason and general intent." Rice v. Wheeling Dollar Sav. Trust Co.
(1951), 155 Ohio St. 391, 396 (citation omitted); Fryman,27 Ohio Misc. at 13 (citations omitted).
 {¶ 42} We hold that Bates substantially complied with the provisions for requesting the production of documents set forth in Civ.R. 34(B). Her requests for production were in writing, served upon the Hieners, identified the documents to be produced, and specified a time and place for compliance. The fact that Bates combined her requests with motions for an examination, pursuant to R.C. 2333.09, does not invalidate her requests. Civil Rule 69 and the provisions of R.C. 2333.09 through 2333.27 are not mutually exclusive. A judgment creditor does not forfeit the right to discovery under the Civil Rules by proceeding under the statutory provisions.
 {¶ 43} We also reject the Hieners' argument that their tax returns are confidential and not subject to production. The Hieners rely upon federal law providing that tax "[r]eturns and return information shall be confidential." 26 U.S.C. § 6103(a). The Hieners' reliance is misplaced. Section 6103 of the United States Code bars the disclosure of tax returns or return information by state and federal officers and employees.26 U.S.C. § 6103(a)(1) and (2). "Nothing in this statute nor the regulations issued thereunder precludes a court of competent jurisdiction from requiring a disclosure of a tax return by the taxpayer in connection with civil litigation to which the taxpayer is a party." Connecticut Importing Co. v. ContinentalDistilling Corp. (1940), 1 F.R.D. 190, 192; cf. McSurely v.McAdams (1980), 502 F.Supp. 52, 56 (section 6103 does not bar "the disclosure of third-party return information to a private party in a non-tax civil case"); United States v. ArtMetal-U.S.A., Inc. (1980), 484 F.Supp. 884, 887 ("§ 6103 is not triggered until after the United States comes into possession of tax returns or return information").
 {¶ 44} The fourth assignment of error is without merit.
 {¶ 45} In their fifth and final assignment of error, the Hieners argue that the trial court erred by ordering the Hieners to pay $305 to Bates' counsel.
 {¶ 46} On July 14, 2003, the Hieners filed a motion requesting the trial court to reconsider its orders requiring the Hieners to produce the financial documents sought by Bates as part of the debtor's examination, scheduled for July 16, 2003. The trial court denied the motion for reconsideration on July 15, 2003. On July 16, 2003, the Hieners appeared for the debtor's examination, but without the requested documents. The trial court summarily ordered the Hieners to pay the cost of hiring a court reporter that morning and Bates' counsel's reasonable attorney fees. The trial court did not afford the Hieners an opportunity to present an explanation for their failure to bring the requested documents.
 {¶ 47} On appeal, the Hieners argue that the only authority for the trial court's action in summarily ordering fees and expenses to be paid was a finding of civil contempt. Since the court failed to offer the Hieners an opportunity to purge the contempt as required by R.C. 2705.05, the trial court erred in imposing the sanction.
 {¶ 48} It is well-settled that "[t]rial courts * * * have extensive jurisdiction over discovery, including inherent authority * * * to impose sanctions for failure to comply with discovery orders * * *." State ex rel. Abner v. Elliott,85 Ohio St.3d 11, 16, 1999-Ohio-199. "A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion."Nakoff v. Fairview Gen. Hosp., 75 Ohio St.3d 254,1996-Ohio-159, at syllabus.
 {¶ 49} We do not view the trial court's order for the Hieners to pay $305 as a sanction for contempt. Rather, the trial court's action constitutes taxing the Hieners with the costs incurred by Bates as a result of the Hieners' failure to produce the documents as required by court order. In addition to the trial court's inherent authority to order the Hieners to pay the costs of the debtor's examination, the trial court is authorized to do so under the Revised Code and the Civil Rules. Revised Code 2333.27 authorizes the judge in an aid of execution proceeding to tax expenses as costs and "to enforce their collection from such parties as ought to pay them." Civil Rule 37(D) mandates that, when a party has failed to comply with a request for production under Rule 34, "the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure." SeeBilikam, Huntington Natl. Bank of Columbus v. Bilikam (1982),2 Ohio App.3d 300, 306 ("The second part of Civ.R. 37(D) is mandatory. If the trial court does not issue an order as a sanction, it is required to assess costs against the offending party and/or his attorney.").
 {¶ 50} Accordingly, the trial court acted within its authority by ordering the Hieners to pay the costs of the hearing without an opportunity to make good their failure to produce the documents. The fifth assignment of error is without merit.
 {¶ 51} The judgment entries of the Lake County Court of Common Pleas denying the Hieners' Motion for Relief from Judgment, Motion for Leave to File Reply, and Motion to Reconsider, and ordering the Hieners' to pay $305 for failing to produce the required documents at a debtor's examination, are affirmed.
Rice, J., concurs, O'Neill, J., dissents with a Dissenting Opinion.
[1] The court had originally ordered the Hieners to appear with documents for examination on May 22, 2003. On the Hieners' motion, the court rescheduled the examination for June 25, 2003. The examination was continued a second time until July 16, 2003.